20512

The STATE, Respondent, v. James Allen FOSTER, Appellant.

(237 S. E. (2d) 589)

*Robert M. Holland,* of Spartanburg, *for Appellant,*

*Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, *for Respondent,*

September 14, 1977.

GREGORY, Justice:

James Allen Foster appeals from his conviction of possession of heroin with intent to distribute. The only issue on appeal is whether the heroin was obtained pursuant to an illegal search and seizure. We affirm.

The facts are briefly as follows. Three narcotics agents of the Spartanburg Police Department were staking out a

motel room in Spartanburg on the night of February 5, 1976. The agents had an arrest warrant for the occupant of the room. It is inferable that a violation of the drug laws was charged in the arrest warrant although the record is not clear on this point. This is not an issue on appeal.

At about 9:00 p. m. appellant drove up to the room in a car belonging to his passenger, Lou Ellen Bivings. He knocked on the door and, receiving no answer, got back into the car and started to drive away. At this time the agents were sitting in an unmarked car, observing the room for activity. Two of the officers recognized appellant, but knew him only by his nickname, "Scuboo". One of the officers testified that he knew of criminal activity by appellant, but admitted that he had no probable cause for arrest, and did not specify the nature of the activity.

The officers decided to follow appellant. One of them conceded at trial that he had intended to stop appellant to ask him his true name, but all testified that when they started to follow appellant, they had no clear idea of what they were going to do. At any rate, they followed appellant for several blocks.

What happened next was disputed at trial. The agents said they were traveling a normal length behind appellant's car, when he pulled his car over to the right side of the road and stopped. The agents pulled their car over and stopped about one-half car length behind appellant's car. All three got out, and appellant did also, at about the same time. One of the officers, Lee, met appellant at about the left rear wheel of appellant's car. Lee identified himself and asked appellant for his driver's license. Appellant produced his license. Lee testified that then he and appellant walked up to the driver's door. At this time one of the agents, Porter, who had been standing to the right rear of appellant's car, moved forward toward the right front door and stood there, looking in at Ms. Bivings. The other agent, Elliott, was standing behind appellant's car.

Lee testified that he then looked into the car for his own protection, because he could not clearly see the passenger. Porter testified similarly that he was observing Ms. Bivings for Lee's protection. Lee testified that when he looked in through the open door of the car, he saw about a "half-load" [1] of heroin lying on the console between the front seats.

Lee then arrested appellant. Porter, on the right side of the car, saw Ms. Bivings fumble with her pocketbook. He saw what he thought was a pistol handle sticking out of the pocketbook, so he opened the door, grabbed the pocketbook and pulled out a pistol. He placed Ms. Bivings under arrest for possession of an unlawful weapon. He then found in the pocketbook a large bag of heroin.

The officers' version of the facts was bolstered by appellant's testimony that his daughter lived near where he stopped, thus giving rise to the inference that he had stopped to visit her.

Appellant's version of the facts was different. He testified that he noticed the officers at the motel and knew they were narcotics agents. He said that while he was traveling on Austin Street (where he pulled over), the officers alternately tailgated his car and dropped back, and switched their car headlights back and forth from high to low beam. Appellant said he pulled over because he thought the agents either wanted to talk to him or pass. At trial appellant also differed with the officers on the discovery of the heroin. Appellant said that his car door was not open and that Lee opened the door and searched the car with his hands before he found the heroin.

Appellant's testimony, and that of the officers, was heard by the trial judge out of the presence of the jury, after appellant's motion to suppress the heroin and the gun. Appellant admitted to the judge that both were his; he did not, however, take the stand before the jury. The trial judge ad-

---

[1] Officer Lee said a "half-load" was 15 glassine bags, which were like "stamp-collector's bags."

mitted the evidence on his finding that appellant pulled off the road voluntarily, that Officer Lee had a right to be where he was when he saw the heroin, and that the heroin was in plain view.

The trial judge has, of course, broad discretion in the admission of evidence. *State v. Atchison*, S. C., 235 S. E. (2d) 294 (1977). We do not think he abused his discretion in resolving the factual conflicts of the testimony in favor of the police officers. The question then remains whether, accepting the officers' version of the facts as true, there was a "search and seizure" in violation of the Fourth Amendment rendering the fruits of the search inadmissible under *Mapp v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. (2d) 1081 (1961).

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." It is only unreasonable searches and seizures that are prohibited. *Terry v. Ohio*, 392 U. S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. (2d) 889, 899 (1968). But first it must be determined whether there was indeed a "search" or "seizure", of either appellant or the car, within the meaning of the Fourth Amendment. The State concedes there was a seizure of appellant, but we discuss the question because of the frequency and importance of police-citizen encounters like the one in the present case.

It is recognized that the police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that he is involved in criminal activity. *Terry v. Ohio, supra, Sibron v. N. Y.*, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. (2d) 917 (1968) ; *Adams v. Williams*, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. (2d) 612 (1972) ; *U. S. v. Brignoni-Ponce*, 422 U. S. 873, 95 S. Ct. 2574, 45 L. Ed. (2d) 607 (1975). A person has been "seized", said *Terry*, "whenever a police officer accosts an individual and restrains his freedom to walk away . . . ."

*Terry v. Ohio, supra,* 392 U. S. at 16, 88 S. Ct. at 1877, 20 L. Ed. (2d) at 903. The Court elaborated on its definition:

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.,* 392 U. S. at 19, n. 16, 88 S. Ct. at 1879, 20 L. Ed. (2d) at 905.

As noted in the above quote, many encounters between police and citizens do not bring the Fourth Amendment into play. As Justice White said in his concurring opinion in *Terry:*

There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

*Id.,* 392 U. S. at 34, 88 S. Ct. at 1886, 20 L. Ed. (2d) at 913.

We believe in the instant case that, accepting the officers' view of the facts, there was no "search" or "seizure" of appellant himself under the Fourth Amendment. Appellant pulled over, without any prompting by the agents. He was asked to produce his license, which he did. If he had at that point refused to cooperate, the continued requests of Lee would have subjected him to a detention and restraint of his liberty. He did not, however, protest, and Lee immediately spotted what looked to be heroin, which gave him probable cause for arrest.

We are, of course, mindful that *Terry* recognized that a "show of authority" may effect a "seizure". *Id.,* 392 U. S. at 19, n. 16, 88 S. Ct. 1868. But the identification of oneself as a police officer, and the request to see a driver's license, with nothing more, is not a "seizure". It is only when the contract between the police officer and the citizen is such as to make the reasonable man aware that he may not just walk away, or refuse to cooperate, that a seizure has occurred. Here, under the facts as presented by the officers, appellant was faced with three men from the city vice squad. There was no movement to encircle him, or otherwise intimidate him. The officer talking to him asked only for his license. From the view of someone who had not known that the agents were following him, the encounter appeared to be almost one of chance. For the brief moments between the self-identification by Officer Lee and his sighting of the heroin, there was no physical or constructive detention of appellant.[2]

We thus conclude that, under the facts presented here, there was no Fourth Amendment issue as to appellant's person. There was, of course, a "seizure" of the heroin and gun, but this seizure was proper because the objects were in plain view of the officers, who were where they had a right to be. *Harris v. U. S.,* 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. (2d) 1067 (1968).

We also conclude, however, that even if the encounter between the agents and appellant were characterized as a "seizure", the seizure must be called a reasonable one.

The "reasonableness" of a seizure depends on the balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *U. S. v. Brignoni-Ponce, supra,* 422 U. S. at 878, 95 S. Ct. at 2578, 45 L. Ed. (2d) at 615; *Terry v. Ohio, supra; Camara v. Municipal Court,* 387 U.

---

[2] See, for cases having similar but distinguishable facts, *People v. Cantor,* 36 N. Y. (2d) 106, 365 N. Y. S. (2d) 509, 324 N. E. (2d) 872 (1975); *State v. Evans,* 26 Or. App. 189, 517 P. (2d) 1225 (1974).

S. 523, 87 S. Ct. 1727, 18 L. Ed. (2d) 930 (1967). Specific factors to be considered in determining "reasonableness" were listed in *U. S. v. Holland,* 510 F. (2d) 453, 455-56 (9th Cir. 1975) (quoting from *Arnold v. U. S.,* 382 F. (2d) 4, 7 [9th Cir. 1967]) :

The reasonableness of such on-the-scene detention is determined by all the circumstances. The seriousness of the offense, the degree of likelihood that the person detained may have witnessed or been involved in the offense, the proximity in time and space from the scene of the crime, the urgency of the occasion, the nature of the detention and its extent, the means and procedures employed by the officer, the presence of any circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant—these and other factors will be relevant in balancing the need for limited on-the-scene detention and inquiry against the inconvenience and indignity to the individual detained.

In light of the foregoing, the intrusion of the agents in the present case was reasonable. Experienced narcotics agents [3] believed criminal activity was afoot. They reasonably suspected appellant had some knowledge of this activity. Because appellant was driving an automobile, the need for urgent action was great. The detention was brief. No evidence suggests the questioning was for harassment or was conducted purposely in front of others to embarrass appellant. Under these circumstances, we think the conduct of the agents was reasonable, even if characterized as a "seizure."

The admission of the heroin and gun was proper, as the objects were in plain view and as the officers had a right to be where they were. *Harris v. U. S., supra.*

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.

---

[3] The officers had among them at least nine years of experience in the narcotics division. Such experience is recognized as important in evaluating the police officers suspicion of criminal activity. *Terry v. Ohio, supra,* 392 U. S. at 30, 88 S. Ct. 1868, 20 L. Ed. (2d) at 911.