23124

The STATE, Appellant v. Sidney Dwight CULBREATH, Respondent.
(387 S. E. (2d) 255)

Supreme Court

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Miller W. Shealy, Jr.,* Columbia, and *Sol. W. Townes Jones, IV,* Greenwood, *for appellant.*

*Theo W. Mitchell,* Greenville, *for respondent.*

Heard Nov. 1, 1989.

Decided Jan. 2, 1990.

HARWELL, Justice:

This is a criminal case in which the State appeals from the trial court's findings that the police officer lacked probable cause to detain respondent Sidney Dwight Culbreath (Culbreath) and that cocaine found in his automobile was inadmissible evidence because it was not in plain view.

## I. FACTS

On January 18, 1988, at approximately 1:00 a.m., Officer Kittles was patrolling alone when he observed a vehicle

parked in a driveway at a residence. The vehicle's engine was running and an individual (Culbreath) was inside. Officer Kittles passed by the residence and vehicle three or four times throughout the night and each time the engine was running and someone appeared to be inside the vehicle. At about 3:00 a.m., Officer Kittles stopped and shined his automobile lights on the vehicle to see if everything was okay, but the person in the car did not move. Officer Kittles radioed his supervisor, who told Officer Kittles that because it was extremely cold, asphyxiation or carbon monoxide poisoning could be possible, and that he should check to make sure that everyone was alright.

Officer Kittles approached the vehicle. The window was rolled up and Culbreath did not respond when Officer Kittles spoke. He tapped on the window and motioned for Culbreath to roll down the window. Finally, after the second request, Culbreath rolled down the window. Officer Kittles asked Culbreath if he was alright and Culbreath became agitated and restless, telling Officer Kittles that he was on private property. Again, Officer Kittles stated that he was checking to see if Culbreath was okay because the car had been parked there for a long time. Culbreath became aggressive, said that everything was okay, and told Officer Kittles he had no right to be there and to leave.

Culbreath indicated that he did not live at the residence or know anyone living there. This, coupled with Culbreath's aggressive behavior caused Officer Kittles to believe some type of criminal activity was probably taking place. He asked to see some identification and Culbreath stated that he had a driver's license. At this time, Officers Owenby and Tolbert arrived and Officer Kittles asked them to approach the vehicle. Culbreath stated that he would show his driver's license to Officer Kittles, but that he was protesting Officer Kittles' stopping and talking to him. Officer Kittles asked to see his identification again. Culbreath did not produce any identification, but began fumbling in the center of the vehicle.

After the resident of the home told Officer Tolbert that she did not know Culbreath, Officer Tolbert approached the passenger side, shined a flashlight into the vehicle, and saw a package of cocaine in Culbreath's hand between his two

fingers. Culbreath appeared to be trying to hide the package in the car console. About the same time Officer Kittles was asking Culbreath what he was doing in the console, Officer Tolbert said, "He's got cocaine, get him out of the car, he's trying to hide it." Officer Kittles asked Culbreath to exit his car, but he refused. Culbreath reached under the seat. Officer Kittles tried to open the door, but Culbreath grabbed the door handle and quickly rolled up the window. Again, Culbreath refused to exit the vehicle, so Officer Kittles grabbed his arm and forced him out of the car. Culbreath managed to shut and lock the door. Officer Kittles then looked through the window with his flashlight and clearly saw a small package containing white powder "[r]ight in plain view." Officer Kittles' testimony was unclear as to whether the cocaine was on or under the seat of the vehicle. Officer Kittles arrested Culbreath for possession of cocaine. The vehicle was towed and reopened later at which time the cocaine was removed.

At the pretrial hearing the trial judge granted Culbreath's motion to suppress the cocaine as evidence. The trial judge found that while the officer properly approached Culbreath to offer assistance there had been an unnecessary detention. He further stated that there was no probable cause to think Culbreath was engaged in any criminal activity. He also found that the cocaine was not in plain view. This appeal follows.

## II. DISCUSSION

### A. DETENTION

The State submits that the trial judge erroneously ruled that the officer lacked probable cause to detain Culbreath. The State argues that in determining that the officer lacked probable cause to detain Culbreath, the trial judge applied the incorrect standard by indicating that full probable cause was needed for detention. We agree. The correct standard is that the police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that he is involved in criminal activity. *Terry v. Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. (2d) 889 (1968). In *Terry*, the Court recognized that law enforcement authorities may briefly stop and detain persons

if the officer has a reasonable basis to believe that the individual in question has committed or is about to commit a crime. If the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances. *Connecticut v. Watson*, 165 Conn. 577, 345 A. (2d) 532 (1973), *cert. denied*, 416 U. S. 960, 94 S. Ct. 1977, 40 L. Ed. (2d) 311 (1974); 3 W. LaFave, *Search and Seizure*, § 9.2(f) (2d ed. 1987).

Here, as noted by the trial judge, Officer Kittles' initial approach towards Culbreath's vehicle was permissible and reasonable. This did not amount to a detention. It was only after this initial approach when Officer Kittles asked to see Culbreath's identification, that the detention occurred. Given the tone of Culbreath's responses to Officer Kittles' questions and his statements that he did not live at the residence or know anyone living there, we find that it was reasonable for Officer Kittles to suspect that criminal activity was afoot. This was sufficient to justify the detention at this time.

We also find that at this point, this detention did not amount to a seizure. A person has been "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. *United States v. Mendenhall*, 446 U. S. 544, 100 S. Ct. 1870, 64 L. Ed. (2d) 497 (1980). Not all personal encounters between policemen and citizens involve "seizures" of persons thereby bringing the Fourth Amendment into play. *State v. Foster*, 269 S. C. 373, 237 S. E. (2d) 589 (1977). The identification of oneself as a police officer, and the request to see a driver's license, with nothing more, is not a "seizure." *State v. Foster, supra.*

Here, the majority of the encounter occurred between Culbreath and only one policeman, Officer Kittles. Officer Kittles merely requested to see Culbreath's identification and asked a few simple questions. Prior to seeing the cocaine, he did not attempt to force Culbreath out of his car or threaten him with arrest if he did not roll down the window or exit the vehicle. There was no evidence of a commanding or threatening tone by Officer Kittles. As in *Foster*, the presence of two additional officers does not change this result where there was no movement to encircle or otherwise intimidate Culbreath. Consequently, at the

time Officer Kittles merely asked to see Culbreath's identification, there was no "seizure" under the Fourth Amendment. It was not until Officer Kittles forced Culbreath out of his vehicle that a seizure of Culbreath's person took place. However, a seizure was proper at this time because after Officer Tolbert saw the cocaine in Culbreath's hand, there was full probable cause to arrest him.

## B. EVIDENCE IN PLAIN VIEW

The State contends that the trial judge erred in finding that the cocaine was not in plain view. Evidence which is discovered while in plain view is admissible. *See Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. (2d) 564 (1971); *State v. Dingle,* 279 S. C. 278, 306 S. E. (2d) 223 (1983); and *State v. Daniels,* 252 S. C. 591, 167 S. E. (2d) 621 (1969). However, the following requirements must be shown: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating evidence was immediately apparent to the seizing authorities. *State v. Dingle, supra.* The "plain view" doctrine is applicable where a police officer is not searching for evidence against the accused but inadvertently comes across an incriminating object. *Harris v. United States,* 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. (2d) 1067 (1968).

In this case, the officers were legitimately on the premises; Officer Kittles was concerned for Culbreath's safety and Officers Owenby and Tolbert had responded to Officer Kittles' back-up call. After Officer Tolbert approached the vehicle, with the aid of his flashlight, he inadvertently spotted the cocaine in Culbreath's hand. This alone would be sufficient to support a finding that the cocaine was in plain view. When the cocaine was initially spotted by Officer Tolbert, there had been no attempt to enter the vehicle by any of the officers or to force Culbreath out of the vehicle. After struggling to get Culbreath out of the vehicle, Officer Kittles, with the aid of his flashlight, also saw the package of cocaine inside the vehicle. While it is unclear whether Officer Kittles saw the cocaine on or under the seat of the vehicle, he testified that the cocaine was in plain view.

Because the only evidence in the record is that the cocaine was in plain view, the trial judge erred in finding that it was not in plain view. We hold that there was probable cause to detain Culbreath and that the cocaine should have been admitted into evidence. We reverse this case and remand for a new trial.

Reversed and remanded.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.