2392

The STATE, Respondent v. Jerry KIRKPATRICK, Appellant.

(462 S.E. (2d) 884)

Court of Appeals

---

*Wade S. Weatherford, III*, Gaffney, and *S.C. Office of Appellant Defense*, Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr.,* and *Staff Attorney G. Thomas Chase,* Columbia, and *Solicitor Holman C. Gossett,* Spartanburg, *for respondent.*

Heard June 6, 1995.

Decided Aug. 28, 1995; Reh. Den. Oct. 25, 1995.

*Per Curiam:*

Jerry Kirkpatrick was convicted of trafficking in more than one hundred pounds of marijuana. He appeals several issues including the trial court's denial of a pretrial motion to suppress evidence, denial of a motion to sever his trial, the court's charge to the jury, and the denial of a posttrial motion for new trial. We affirm.

I.

At a pretrial motion hearing, evidence was presented that Jerry Kirkpatrick rented two rooms at the Days Inn Môtel in

Gaffney, South Carolina, on May 27, 1991. He and another individual arrived at the motel with pickup truck and a U-Haul. Only Kirkpatrick came inside the lobby. Kirkpatrick refused several rooms before he settled on two rooms on the back side of the motel. He paid cash for them. The hotel manager noted a large amount of vehicular traffic to and from the rooms as well as a number of telephone calls. The room occupants also refused maid service. The manager became suspicious and contacted the Cherokee County Sheriff's Office on the morning of May 29. The police decided to place the two rooms under surveillance. Two officers, Darryl Betsill and Ben Moore, checked into a room next door.[1] They struck up a conversation with two occupants of the rooms, later identified as David and Darlene Higgins.[2] During the course of the conversation, David Higgins asked Betsill if he knew where they could get any "pot." Betsill told Higgins he knew where to get some and Higgins gave him money to make a purchase. Betsill left and met the Cherokee County Sheriff near the motel lobby to discuss the situation. They decided to obtain warrants against the Higginses for attempting to possess marijuana. Meanwhile, the surveillance team advised Betsill and the sheriff that a black Pontiac Firebird automobile occupied by a man and woman had arrived and the couple knocked on the door to one of the rooms. When no one answered, the couple got back into the car and left the motel. The car was observed driving to a nearby convenience store where a man got out to use a pay telephone. A marked police vehicle pulled in behind the Firebird and Betsill walked over to the convenience store to obtain identification from the occupants. The man's identification showed him to be Jerry Kirkpatrick. The woman in the car was his wife. Betsill stated the last name of Kirkpatrick rang a bell with him because that was the last name used by David Higgins. He advised Kirkpatrick the occupants of the motel room were about to be arrested and he would have to detain Kirkpatrick and his wife. Betsill testified Mrs. Kirkpatrick became upset and separately told the officers the people in the room had between twenty and fifty

---

[1] Betsill is a Highway Patrol officer and Moore is a SLED agent. They are members of the Governor's Raid Team.

[2] Officer Betsill testified Higgins initially identified himself as "David Kirkpatrick."

pounds of marijuana. She stated she had not seen the marijuana but her husband had told her about it. While talking with Kirkpatrick's wife, Officer Betsill observed Kirkpatrick standing near the left front wheel of his car, rocking back and forth with his hands in and out of his pockets. When Kirkpatrick moved away for the wheel, officers found a key with a U-Haul emblem on it lying on the left front tire near the place Kirkpatrick was standing. The key fit the lock on the back of the U-Haul at the motel. Arrest warrants were obtained for David and Darlene Higgins and they were arrested at the motel. According to Betsill, the motel manager advised the Higginses' vehicles would have to be moved from the motel. Betsill testified he gave Higgins several options. Betsill told Higgins he could call a friend to pick up the U-Haul, call a wrecker service of his choice or someone he knew to tow the vehicle, or have Betsill take care of having the vehicle towed. Betsill advised him it would be inventoried if the authorities took custody of it. Higgins then told Betsill to take custody of the vehicle. Upon conducting an inventory of the U-Haul, nineteen bales of marijuana were discovered.

The court held the approximate ninety minute detention of Kirkpatrick was reasonable because he was detained to prevent him from telephoning the motel room as the officers were in the process of obtaining arrest warrants for David and Darlene Higgins. The court also concluded Kirkpatrick abandoned the key to the U-Haul and it was found by the officers in plain view. As to the warrantless search of the U-Haul, the court held Higgins had the authority to consent and voluntarily agreed to the two and inventory search of the vehicle. Kirkpatrick argues the stop at the convenience store constituted an illegal seizure without probable cause. He also contends the warrantless search of the U-Haul violated the Fourth Amendment. We disagree.

The police may briefly detain and question a person based upon a reasonable suspicion, short of probable cause for arrest, that he is involved in criminal activity. If the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances. *State v. Culbreath,* 300 S.C. 232, 387 S.E. (2d) 255 (1990). A person has been "seized" only when, by means of physical force or a show of authority, his

freedom of movement is restrained. *Id.* Identification of oneself as a police officer, and the request to see a driver's license, with nothing more, is not a seizure. *Id.* A seizure of a person must be reasonable and the reasonableness depends on the balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *State v. Foster*, 269 S.C. 373, 237 S.E. (2d) 589 (1977).

In this case, police agents were conducting a surveillance of the rooms at the Days Inn Motel. Kirkpatrick came to the rooms late at night and did not receive an answer to his knock. He immediately went to a telephone at a convenience store and began to make a call. When asked for identification, Kirkpatrick gave the same last name as the alias used by David Higgins. It was also the same name used to rent the motel rooms. At that time, Agent Betsill was in the process of securing arrest warrants for the room occupants. Other agents were still at the motel conducting surveillance and one agent was still possibly in the presence of the Higginses in an undercover capacity. Under the circumstances, the stop of Kirkpatrick was justifiable. His detention was reasonable given the information received by Betsill and the need to protect those officers remaining at the motel from danger due to potential disclosure of the surveillance.

Kirkpatrick maintains the court erred in concluding the U-Haul key was properly seized under "plain view" exception because the incriminating character of the key was not immediately apparent and, therefore, there was no probable cause for the seizure. Whether or not the key was properly seized by the police, we find no error. The erroneous admission of the key evidence was harmless inasmuch as Kirkpatrick admitted he rented the U-Haul in question and bought a lock, with two keys, to put on it. Thus, the evidence of the key linking Kirkpatrick to the U-Haul was merely cumulative.

Finally, Kirkpatrick argues the court erred in admitting evidence of the bales of marijuana discovered in the U-Haul. As noted, Agent Betsill testified the motel manager stated the vehicles would have to be removed from the premises if the room occupants were being arrested. David Higgins was given several options concerning disposition of the vehicles. Betsill told Higgins he could either call a

friend to come get the vehicles or call his preferred towing service. As a third alternative, Betsill stated he would call the next wrecker on the Highway Patrol rotation list for Higgins but the vehicle would be inventoried in accordance with standard procedure if law enforcement assumed custody of it. According to Betsill, Higgins told him to take custody of the U-Haul. The marijuana was found during the inventory. Kirkpatrick argues the motel manager had no right to require the removal of the vehicles and, therefore, any consent given by Higgins to police towing and inventory was invalid if given after the wrongful assertion that the U-Haul must be towed.

Kirkpatrick does not argue Higgins had no authority over the U-Haul and could not consent to its disposition. The evidence establishes the police were responding to the motel manager's request for removal of the vehicles. Law enforcement officials did not initiate the removal from the premises. Higgins was advised the vehicles would be inventoried if he decided upon the alternative of police custody. Although he was under arrest at the time, the evidence supports the conclusion Higgins was given several options for removal of his vehicle, but knowingly and voluntarily consented to the option which included an inventory of the vehicle's contents. We therefore find no error in the court's decision that the warrantless search of the U-Haul did not violate the Fourth Amendment.

## II.

Kirkpatrick argues the court erred in denying his motion to sever his trial from that of David Higgins. While Higgins was also charged with trafficking, he was not present at the trial.[3] The primary witness for the prosecution was Darlene Higgins. In the defense case, Kirkpatrick maintained he had only been trying to help David Higgins in Higgins' trucking business by loaning him money, helping him purchase trucks on credit and allowing Higgins to use his credit card. While he admitted he rented the U-haul and motel rooms in Gaffney, he asserted he did not know Higgins was transporting marijuana. He claimed he did not know Higgins had stolen a load

---

[3] Higgins was represented by counsel at trial. There is evidence in the record Higgins escaped from custody.

of marijuana and brought it to South Carolina until after he had rented the rooms at the motel.

Motions for a severance and separate trial are addressed to the sound discretion of the trial judge. Absent a showing of an abuse of discretion, the court will not disturb the trial court's ruling on appeal. *State v. Boys*, 302 S.C. 545, 397 S.E. (2d) 529 (1900).

The state offered a redacted statement from David Higgins during trial. In this statement, Higgins explained how he picked up the marijuana in Arizona and trucked it to Mississippi. He described how he tricked the marijuana dealers into thinking his truck had burned. He also described loading the marijuana in a rented U-Haul in Mississippi after hiding it in some motel rooms for a few days. The U-Haul was then driven to South Carolina. At no point was a reference made to Kirkpatrick, although there was the reference to the rented U-Haul and the rental of rooms at the Days Inn in Gaffney. Darlene Higgins testified her husband and Jerry Kirkpatrick has been running loads of marijuana. She stated they had previously discussed stealing a load. Darlene Higgins further implicated Jerry Kirkpatrick in this incident by testifying he was given two bales of marijuana and helped them secure the rooms at the Days Inn. Over objection she testified she, her husband, and Kirkpatrick cut up the bales and rebagged the  marijuana. She also stated she gave money to Kirkpatrick after selling some of the marijuana.

We find no abuse of discretion in the court's decision to deny a motion to sever the trials. The testimony of Darlene Higgins alone was sufficient to implicate Kirkpatrick. Further, the redacted statement did not implicate him by name or description.

### III.

Kirkpatrick argues the court erred in its jury charge on reasonable doubt. He also contends the court erred in refusing to charge the lesser included offense of possession of marijuana with intent to distribute.

With respect to reasonable doubt, the court charged the jury as follows:

> A reasonable doubt is simply a doubt rising from the testimony or lack of testimony. It is a doubt for which you could give a reason. A reasonable doubt is the kind of

doubt that would cause a reasonable person to hesitate to act. A reasonable doubt is a doubt for which a person honestly seeking to find the truth can give a reason.

Counsel objected to the charge contending it required the fury to articulate a reason which was a higher standard than a standard of hesitation. A jury charge is defective if a reasonable juror could interpret it to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. *State v. Manning*, 305 S.C. 413, 409 S.E. (2d) 372 (1991). The charge in this case does not contain the exact language found objectionable in the *Manning* case (i.e. reference to "moral or grave certainty" or "real reason" coupled with error in the circumstance evidence charge), although there are statements about "a doubt for which you could give a reason." *See State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994) (wherein the court upheld a reasonable doubt charge where appellant complained the trial judge repeatedly told the jury a reasonable doubt is one for which you can give a reason, finding the charge lacked the offending language present in *Manning*). Viewing the "reasonable doubt" charge a a whole, we find no reversible error given the court's use of the suggested language from *Manning* that a reasonable doubt is "the kind of doubt that would cause a reasonable person to hesitate to act."

Kirkpatrick argues the court also erred in refusing his ▬ request to charge a lessor included offense of possession with intent to distribute marijuana. In analyzing the legislative intent behind the controlled substance statutes, the Supreme Court held possession with intent to distribute marijuana is a lesser included offense of trafficking based upon possession. *Matthews v. State*, 300 S.C. 238, 387 S.E. (2d) 258 (1990). Where there is conflicting evidence as to whether the amount of marijuana involved is sufficient to invoke the trafficking statute, both charges should be submitted to the jury. However, if the undisputed evidence is that the amount involved exceeds the minimum trafficking amount, then only the trafficking charge should be submitted to the jury. *Id.*; *State v. Grandy*, 306 S.C. 224, 411 S.E. (2d) 207 (1991). Kirkpatrick admits the amount of marijuana found in the U-Haul was over one hundred pounds. We have concluded the inventory search of the U-Haul was valid. Kirkpatrick admitted he

rented the U-Haul and purchased the lock for it. A key to the lock was found near where Kirkpatrick was standing. We conclude the evidence was undisputed that the amount of marijuana involved exceeded the trafficking amount required in the statute.

IV.

Kirkpatrick asserts the court erred in refusing his motion for a new trial based upon an undisclosed plea agreement between the State and Darlene Higgins, a co-defendant. Darlene Higgins testified for the prosecution at the trial. Her testimony heavily implicated Kirkpatrick in the marijuana trafficking plan. She later pleaded guilty to the lesser offense of trafficking in more than ten but less than one hundred pounds of marijuana for which she received the sentences of one year on the trafficking and 90 days on the attempted possession. After a hearing on the new trial motion, the court held there was no written or implied plea agreement between Darlene Higgins and the state, the state's action in not defining the consideration it would give in return for her cooperation was not improper, and there were no negotiations or promises made by the State prior to the trial.

Due process requires disclosure by the prosecution, upon motion of the defendant, of evidence which would be favorable to the accused and which is material to guilt or punishment. Evidence which may be used to impeach a witness's credibility is favorable to an accused and should be disclosed. *State v. Hinson,* 293 S.C. 406, 361 S.E. (2d) 120 (1987).

At trial, Darlene Higgins testified no promises had been made to her and she had only been told the state would consider it if she told the truth. She testified she knew she was facing a twenty-five-year sentence on the trafficking charge and she was hoping to help herself by testifying for the prosecution. At the hearing on the new trial motion, the assistance solicitor agreed the testimony of Darlene Higgins was crucial to the case. He stated he never made a direct promise to Higgins that he would reduce the charge, but told her that her cooperation would be taken into consideration. He further testified he had made up his mind to reduce the charge to something less if she testified truthfully, but there

was no written or oral plea agreement and he never conveyed to her or her attorney the expectation of a reduced charge. Darlene Higgins' attorney also testified at this hearing. He stated, although he attempted to pin the solicitor down as to exactly what he would do, there was never any written or implied agreement. He further testified the solicitor refused to make any deals and never discussed a reduction of charges, but stated only he would give consideration to her truthful testimony.

We find no error in the court's decision on the new trial motion. The evidence supports the conclusion there was no undisclosed plea agreement. Futher, defense counsel thoroughly cross-examined Darlene Higgins about the representations made to her by the prosecution and had the opportunity to expose any bias she might have in giving her testimony.

The decision of the circuit court is

Affirmed.

SHAW, CURETON and CONNOR, JJ., concur.