486 S.E.2d 498

**In the Interest of THOMAS B.D., a Juvenile
Under the Age of 17, Appellant.**

No. 2666.

Court of Appeals of South Carolina.

Heard April 8, 1997.
Decided June 2, 1997.
Rehearing Denied Aug. 28, 1997.

Assistant Appellate Defender Lesley M. Coggiola, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney Norman Mark

Rapoport, Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

HOWELL, Chief Judge.

Thomas D., a juvenile, was charged with simple possession of marijuana. The family court found Thomas D. to be delinquent and sentenced him to probation with special conditions. Thomas D. appeals, arguing the family court erred in denying his motion to suppress the marijuana because he was illegally searched. We affirm.

## I.

At the hearing on Thomas's motion to suppress, Lt. Nelson Brown of the Georgetown Police Department testified that he received a telephone call from the mother of Thomas D., indicating her son, who was sixteen, had not come home and was staying at the apartment of an older female.[1] Thomas's mother asked Lt. Brown if he could go to the apartment and try to get her son to leave. Lt. Brown and two other officers proceeded to the apartment to try to locate Thomas. They knocked on the door, but no one responded. The officers waited out of sight and eventually observed Thomas leave the apartment. At that point, they stopped him. Although Lt. Brown stated that Thomas was not under arrest, the officers did perform a weapons pat-down search before placing Thomas in the police car. The officers took Thomas to his mother's place of business, where she asked them to take him to school. While en route to Georgetown High School, Thomas asked the officers if he could smoke. Lt. Brown stated he could see a cigarette pack in Thomas's T-shirt pocket. When they arrived at the school, Lt. Brown took the cigarette pack out of Thomas's pocket.[2] At that time, he observed a "marijuana

1. Lt. Brown was the lieutenant in charge of the criminal investigation division in the youth services section of the Georgetown Police Department.

2. Lt. Brown stated that his department had a program which assigned school resource officers to schools and that the department received a handbook from the school outlining school disciplinary policies. Through this information he was aware that school policy prohibited possession of cigarettes on school grounds. He also testified that it was

roach" inside the clear cellophane wrapper of the cigarette pack. Thomas was then placed under arrest for possession of marijuana. A further search revealed a packet of marijuana in Thomas's wallet.

Thomas, however, testified that the officers did not pat him down when they placed him in the car. He denied that he asked to smoke, although he admitted the officers saw him smoking when they stopped him outside the apartment. According to Thomas, the officers informed him they would have to search him when they arrived at the school. Thomas also testified that the cigarette pack was in his pants pocket rather than his shirt pocket.

## II.

Thomas argued below and argues again on appeal that the officers' search of him when they took the cigarettes violated the Fourth Amendment. According to Thomas, the evidence of the marijuana should be excluded because he was not under arrest at the time the cigarette package was seized, he did not consent to the search, and the officers had no legal basis to search him. The family court judge denied the motion to suppress. From this decision Thomas D. assigns error. We disagree.

The Fourth Amendment to the United States Constitution provides that the right of the people to be free from "unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend IV. The State concedes that Lt. Brown conducted a search of Thomas D. when the officer took the pack of cigarettes from the minor's T-shirt pocket and subsequently discovered the marijuana. However, the State contends the search was valid under the "reasonable suspicion" test articu-

---

illegal for someone to transfer cigarettes to a minor and that the department seizes cigarettes from minors to use as evidence in the event it prosecutes someone for transferring the cigarettes to the minor. *See* S.C.Code Ann. § 16–17–500 (Supp.1996) ("It shall be unlawful for any person to sell, furnish, give, or provide any minor under the age of eighteen with cigarettes.").

lated in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), a case involving the legality of searches of students conducted on school property by school officials. We disagree.

In *T.L.O.*, a teacher discovered two students smoking in the lavatory in violation of a school rule. The students were taken to the principal's office, where one student denied she had been smoking. At that point, the assistant principal demanded to see the student's purse and found a pack of cigarettes in it. The principal also noticed a package of cigarette rolling papers in the purse. 469 U.S. at 328, 105 S.Ct. at 735–36. Suspecting that a closer examination might lead to evidence of drug use, the principal thoroughly searched the purse and discovered a small amount of marijuana and other material which implicated the student in marijuana dealing. *Id.* When delinquency charges were brought against the student, she moved to suppress the evidence found in her purse on the ground the principal's search of the purse violated the Fourth Amendment. *Id.* at 329, 105 S.Ct. at 736.

The Supreme Court concluded that the Fourth Amendment applies to searches conducted by school authorities. 469 U.S. at 333, 105 S.Ct. at 738. Nonetheless, the Court concluded that the warrant requirement "is unsuited to the school environment" because it would "unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.* at 340, 105 S.Ct. at 742. Thus, the Court held that school officials need not obtain a warrant before searching a student so long as the school official has reasonable grounds to suspect that the search will yield evidence of a violation of the law or school rules. 469 U.S. at 340–43, 105 S.Ct. at 742–44. However, the Court was careful to point out that this exception only applied to searches conducted by "school authorities acting alone and on their own authority. This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question." *T.L.O.*, 469 U.S. at 341, n. 7, 105 S.Ct. at 743, n. 7.

Clearly, the search of Thomas D. was not carried out by school officials. The police were not acting on behalf of or as

agents for the school when they searched Thomas D. Instead, the search was conducted by police in furtherance of a law enforcement objective—that is, the removal of Thomas D. from a surrounding detrimental to his welfare and his relocation to the parentally-approved and societally-mandated school environment. While Thomas D. was a student and the search apparently took place on school property, the search was not conducted by a school official.

The State argues the cigarettes were "contraband" and that Thomas D. was prohibited by school policy from possessing cigarettes on school property. If Thomas D. had been searched by a school official on school property based upon a reasonable suspicion of a violation of school rules, the situation might be different. However, the fact remains the warrantless search of Thomas D. was conducted by law enforcement officers who were not connected with the school. Because the police were acting on their own authority and cannot be considered agents of the school, the reasonable suspicion standard set forth in *T.L.O.* is simply inapplicable to the case at bar. Thus, the question becomes whether the warrantless search of Thomas D. violated the Fourth Amendment's prohibition against unreasonable searches and seizures. We conclude it did not.

Generally, a warrantless search is unreasonable *per se* and such a search violates the Fourth Amendment prohibition against unreasonable searches and seizures. *State v. Bultron,* 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995), *cert. denied* (December 8, 1995). However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well recognized exceptions to the warrant requirement.[3] The burden of establishing probable cause and the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the prosecution. *Id.* at 332–33, 457 S.E.2d at 621. With respect to probable cause, the standard for probable cause to

3. The recognized exceptions to the warrant requirement include (1) search incident to a lawful arrest, (2) "hot pursuit," (3) stop and frisk, (4) automobile exceptions, (5) the "plain view" doctrine, (6) consent, and (7) abandonment. *State v. Dupree,* 319 S.C. 454, 462 S.E.2d 279 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 951, 133 L.Ed.2d 875 (1996).

conduct a warrantless search is the same as that for a search with a warrant. *Id.* at 333, 457 S.E.2d at 621.

The State argues that the cigarette pack was in "plain view" in Thomas D.'s T-shirt pocket when it was seized and that the marijuana was then immediately apparent. Thus, the State contends that the search was proper under the plain view exception to the warrant requirement. We agree.

▪ In order for evidence to be seized under the plain view exception to the search warrant requirement three things must be shown: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *State v. Culbreath*, 300 S.C. 232, 237, 387 S.E.2d 255, 257 (1990).[4] While the first two prongs of test are easily met in this case, the satisfaction of the third prong is not as readily apparent.

Thomas D. was being transported by the police at the request of his mother. This law enforcement function was under the authority of S.C.Code Ann. § 20–7–600(A) (1976),[5] which provides that a child may be taken into custody when his "surroundings are such as to endanger his welfare." [6] Under section 20–7–600, the police are charged with the responsibility of protecting the children they take into custody. While section 20–7–600 states that this custodial arrangement "shall not be termed an arrest," it is, for many purposes, the practical equivalent of an arrest.

Although it is against the law for someone to provide cigarettes to a minor, it is not against the law for a minor to

4. The United States Supreme Court, however, has concluded that the plain view exception to the Fourth Amendment's warrant requirement applies even if the discovery of the evidence was not inadvertent, if the other requirements of the exception are satisfied. *Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990).

5. Section 20–7–600 was repealed by 1996 Act No. 383, § 2, as of July 1, 1996. Thus, section 20–7–600 was in effect at the time of the incident and adjudicatory proceeding.

6. Clearly, the welfare of a sixteen-year old boy is endangered when the child skips school to spend the night with an older woman.

possess cigarettes.[7]  Contrary to the State's argument, the mere fact that a minor possesses cigarettes does not necessarily mean the possession by a minor resulted from the criminal act of another or himself.  However, when Thomas D. was delivered to the school grounds by the officers in fulfillment of their statutory obligation, the character of the relatively innocent cigarettes changed and became an immediate threat to his continued presence on the school grounds.  While the cigarettes may not have been contraband in the traditional legal sense, they nevertheless became a major obstacle to the fulfillment of the officers' responsibilities, given that the cigarettes were prohibited by school policy.  Had the officers not seized the cigarettes, their fulfillment of their obligations under section 20–7–600 would have been illusory at best, given that Thomas D. would have been suspended as soon as he entered the school with cigarettes.  Thus, the illegality of Thomas D.'s possession of the cigarettes resulted from the interplay between the school policy prohibiting cigarettes and the officers' statutory obligations under S.C.Code Ann. § 20–7–600.  It would be an absurd conclusion indeed to hold otherwise and encourage an artificial compliance by the officers with their statutorily required responsibilities.

Thus, the three prongs of the "plain view" exception to the warrant requirement were met, and, under the circumstances, the officers clearly had probable cause to search Thomas D. The family court, therefore, properly denied Thomas D.'s motion to suppress.

Accordingly, for the foregoing reasons, the decision of the family court is hereby

**AFFIRMED.**

GOOLSBY, J., concurs in result in a separate opinion.

ANDERSON, J., dissents in a separate opinion.

GOOLSBY, Judge (concurring):

This is an appeal from an adjudicatory proceeding concerning a charge of simple possession of marijuana.  The family

---

7.  However, it is a violation of state law for a minor to possess beer, wine, or alcoholic beverages.  *See* S.C.Code Ann. §§ 20–7–8920 & 8925 (Supp.1996).

court found Thomas D., the juvenile defendant, to be delinquent and sentenced him to probation with special conditions. Thomas D. appeals. I agree the judgment should be affirmed, but for different reasons.

As I read the record, Lieutenant Nelson Brown of the Georgetown police department received a telephone call from Thomas's mother. She stated Thomas had spent the night at an older female's house. She asked Lieutenant Brown to pick Thomas up and to take him to school. After waiting a short while, Lieutenant Brown found Thomas and placed him in the police car.

Lieutenant Brown and two other officers transported Thomas to Georgetown High School in a police car. While en route, Thomas told the officers he wanted to smoke.[1] After they arrived at the school and while they were "[p]arked directly in front of the Georgetown High School and getting ready to go in the door ...," Lieutenant Brown noticed Thomas had a pack of cigarettes in the pocket of his tee-shirt. Lieutenant Brown, who knew of the school policy that proscribed the possession of cigarettes on school property, took the cigarettes from Thomas. In so doing, Lieutenant Brown inadvertently found marijuana. He then placed Thomas under arrest for simple possession of marijuana and transported him to the police station. There, officers found more marijuana in Thomas's wallet when they searched him.

The seizure by the arresting officer of the pack of cigarettes, which was in plain view, was a reasonable confiscation of property that was illegal for Thomas to possess at that time and place. *See Washington v. Chrisman,* 455 U.S. 1, 5–6, 102 S.Ct. 812, 815–16, ,70 L.Ed.2d 778 (1982) (the "plain view" doctrine "permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be"); *State v. Culbreath,* 300 S.C. 232, 237, 387 S.E.2d 255, 257 (1990) ("The 'plain view' doctrine is applicable where a police officer is not searching for evidence against the accused but inadvertently comes across an incriminating object."); *cf.*

---

1. Thomas testified he never asked the officers for a cigarette and the officers knew he smoked only "[b]ecause he [sic] saw me smoking when he [sic] pulled up."

*Johnson v. Multiple Misc. Items 1–424,* 523 N.W.2d 238 (Minn.Ct.App.1994) (defining contraband as property that is illegal for a particular offender to possess, even if possession of such property by another would not be illegal). Thus, the subsequent discovery and seizure of the marijuana was lawful as well.

ANDERSON, Judge, (dissenting):

I respectfully dissent.

The majority opinion concludes the search was justified under a probable cause standard. I disagree.

### *FACTS/PROCEDURAL BACKGROUND*

On April 24, 1995, Minor's mother telephoned Lt. Nelson Brown of the Georgetown Police Department. She indicated her son had not come home and was staying at the apartment of a nineteen year old woman. She asked Brown if he could go to the apartment and try to get her son to leave and go to school. At the time of the incident, Minor was sixteen. Lt. Brown and two other officers proceeded to the older woman's apartment to try to locate Minor. They knocked on the door, but no one responded.

The officers went to the woman's mother's house to determine the whereabouts of Minor and the woman with whom he was staying. The woman's mother agreed to try to contact them. When they returned to the woman's apartment, the officers noticed the woman's car was gone. The officers drove around and tried to find the car. When they rode back to the woman's apartment, her car was parked in front. The officers again knocked on the door, but no one responded. The officers waited out of sight and eventually observed Minor leave the apartment and run into some bushes. One of the officers pursued Minor and caught him. The officers then patted Minor down for a weapons check before he was placed in the police car. Lt. Brown stated Minor was not under arrest at that time.

The officers drove Minor to Kensington School, where his mother works. She asked them to take him to school. While he was being transported to Georgetown High School, Minor asked the officers if he could smoke and indicated he had his own cigarettes. Pursuant to school policy, students who pos-

sess cigarettes on school grounds get suspended. According to Lt. Brown, he could see the cigarette pack in Minor's T-shirt pocket and, when they arrived at the school, he took the cigarette pack out of Minor's pocket. Lt. Brown stated his department had a program which assigned school resource officers to schools and the department received a handbook from the school that outlined school disciplinary policies. Through this information, he was aware school policy prohibited possession of cigarettes on school grounds. He also testified it was against the law for someone to transfer cigarettes to a minor and the department seizes cigarettes from minors to use as evidence in case they prosecute someone for transferring the cigarettes to the minor.[1]

When he removed the cigarettes from Minor's shirt pocket, Lt. Brown observed a "marijuana roach" inside the clear cellophane wrapper of the cigarette pack. Minor was placed under arrest for possession of marijuana. In a further search, Brown discovered a packet of marijuana in Minor's wallet.

Minor testified the officers did not pat him down when they placed him in the car. He denied he asked to smoke, although he admitted the officers saw him smoking when they stopped him outside the apartment. According to Minor, when they arrived at the school, the officers said they would have to search him. He said the cigarette pack was in his pants pocket, not his shirt pocket.

The family court held a hearing to address Minor's motion to suppress the marijuana. Minor's counsel argued the search violated the Fourth Amendment and the evidence of the marijuana should be excluded because Minor was not under arrest at the time the cigarette pack was seized, he did not consent to the search, and the officers had no legal basis to search him. After testimony, the family court judge denied the motion to suppress.

## ISSUE

Did the trial court err in denying Minor's motion to suppress evidence seized by a police officer after search of Minor on school property?

---

**1.** *See* S.C.Code Ann. § 16–17–500 (Supp.1996) (it shall be unlawful for any person to sell, furnish, give, or provide any minor under the age of eighteen with cigarettes).

*LAW/ANALYSIS*

## The Fourth Amendment and Reasonable Government Searches

The Fourth Amendment to the United States Constitution provides the federal government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. Amend. IV. The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The exclusionary rule, which provides a remedy for a violation of the Fourth Amendment, is also applicable to the states. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The ultimate measure of the constitutionality of a governmental search is "reasonableness." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). To conduct a search, a state officer must have probable cause evidenced by a warrant. *See Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). However, a warrant is not required to establish the reasonableness of all government searches. *Vernonia, supra.* When a warrant is not required, probable cause is not invariably required either. *Id.* A search unsupported by probable cause can be constitutional " 'when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Vernonia*, 515 U.S. at 653, 115 S.Ct. at 2391. Such "special needs" exist in the public school context. *Id.*

## I. Was the Search Justified as a *New Jersey v. T.L.O.*[2] School Search?

The State argues the search was a legitimate school search permitted under the holding in *T.L.O.* The State recognizes Lt. Brown conducted a search of Minor when the officer took the pack of cigarettes from Minor's T-shirt pocket and subsequently discovered the marijuana. However, the State asserts the legal test to be applied is the "reasonable suspicion" test

---

**2.** 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

outlined in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

In *T.L.O.*, the United States Supreme Court rejected the need for school officials to obtain search warrants before searching students who are under their authority. Moreover, the Court lessened the search and seizure standard for school officials from probable cause to reasonable suspicion. The Supreme Court concluded the Fourth Amendment applied to searches conducted by school authorities and explained:

> How, then, should we strike the balance between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place? It is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject. The warrant requirement, in particular, is unsuited to the school environment: requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Just as we have in other cases dispensed with the warrant requirement when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search," *Camara v. Municipal Court*, 387 U.S. at 532–533, 87 S.Ct. 1727[, 1733], 18 L.Ed.2d 930, we hold today that school officials need not obtain a warrant before searching a student who is under their authority.

> The school setting also requires some modification of the level of suspicion of illicit activity needed to justify a search. Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon "probable cause" to believe that a violation of the law has occurred. . . .

> . . . [T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend

simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception"; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 340–43, 105 S.Ct. at 742–43 (citations and footnotes omitted).[3] *T.L.O.* limited its application to school authorities acting alone and on their own authority. *Id.* at 341 n. 7, 105 S.Ct. at 743 n. 7. The *T.L.O.* Court noted the case did "not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies...." *Id.* The Court did not "decide whether individualized suspicion is an essential element of the reasonableness standard we adopt for searches by school authorities." *Id.* at 342 n. 8, 105 S.Ct. at 743 n. 8. However, in other contexts, the Court held that "although 'some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] ... the Fourth Amendment imposes no irreducible requirement of such suspicion.'" *Id.*

Although Minor was a student and the search took place on school property, the search was not conducted by a school official. The State claims the cigarettes were "contraband" and the minor was prohibited by school policy from possessing cigarettes on school property. If Minor had been searched by a school official on school property based upon a reasonable

---

3. South Carolina has adopted the "reasonableness standard" articulated in *T.L.O., supra,* in S.C.Code Ann. §§ 59–63–1110, *et seq.* (Supp. 1996).

suspicion of a violation of school rules, the situation might be different. However, the fact remains the warrantless search of Minor was conducted by a law enforcement officer who was not connected with the school. Accordingly, the "reasonable suspicion" test enunciated in *T.L.O., supra,* is not applicable.

Here, the police officer's search required a standard of probable cause. Absent a direct nexus of the law enforcement officer to school authority, the doctrine enunciated in *T.L.O., supra,* is inapposite.

In *State v. Tywayne H.,* 123 N.M. 42, 933 P.2d 251 (App. 1997), Mothers Against Drunk Drivers (MADD) co-sponsored an after-prom dance with Clovis High School in the school's gym. Two uniformed police officers from the Clovis Police Department provided security. Students were instructed to enter through the front entrance, where their hands were stamped. Once a student left the gym, he or she was not allowed to return.

Shortly after the dance began, Officer Mondragon and another officer arrived to check on the two officers already present. At approximately 12:45 a.m., two students, Tywayne and a friend, entered through a side door. Officer Mondragon asked one of the school's coaches standing nearby if students were allowed to enter through that door. When the coach said no, the four officers quickly surrounded the two students, and Officer Mondragon put his hand on Tywayne's shoulder. The officers tried to see if the students had stamps on their hands, but it was too dark in the gym to tell. The smell of alcohol emanated from Tywayne's friend. Officer Jackson testified he smelled alcohol on Tywayne and that Tywayne admitted drinking one beer outside. Officer Mondragon asked Tywayne to step outside, and Officer Summers asked the friend to follow. Both students were frisked. Officer Mondragon's pat-down search of Tywayne uncovered a loaded semi-automatic handgun.

Tywayne filed a motion to suppress the evidence seized. The motion was denied and Tywayne was adjudged a delinquent child for unlawfully carrying a deadly weapon on school premises. On appeal, Tywayne claimed the search of his person which uncovered the weapon was unlawful.

*Tywayne H., supra,* edifies:

The search here was not conducted by school authorities on their own initiative or even by school authorities with or at the direction of a law enforcement agency. Instead, it was conducted completely at the discretion of the police officers. The only police contact with a school official was Officer Mondragon's question to the coach concerning whether students were permitted to enter through the side door. The coach answered that they were not but gave no directive to the officers to search the students. During the pat-down search itself, there were no school authorities present.

We thus determine that *T.L.O.'s* lowered standard of reasonable suspicion does not apply under the circumstances of this appeal. Probable cause was therefore required to conduct the search of [Tywayne].

*Tywayne H.*, 123 N.M. at ——, 933 P.2d at 254.

## II. Was the Search Justified Under a Probable Cause Standard?

### a. Warrantless Searches

Generally, a warrantless search is per se unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures. *See State v. Dupree*, 319 S.C. 454, 462 S.E.2d 279 (1995). However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well recognized exceptions to the warrant requirement. *Id.* The recognized exceptions to the warrant requirement include (1) search incident to a lawful arrest, (2) "hot pursuit," (3) stop and frisk, (4) automobile exceptions, (5) the "plain view" doctrine, (6) consent, and (7) abandonment. *Id.* The burden of establishing probable cause and the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the prosecution. *State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App. 1995). *See also Dupree, supra* (burden is upon State to justify warrantless search).

The standard for probable cause to conduct a warrantless search is the same as that for a search with a warrant. *State v. Peters*, 271 S.C. 498, 248 S.E.2d 475 (1978); *Bultron, supra.* "That is, a justifiable determination, based upon the totality of

the circumstances and in view of all the evidence available to law enforcement officials at the time of the search, that there exists a practical, nontechnical probability that a crime is being committed or has been committed and incriminating evidence is involved." *Bultron,* 318 S.C. at 332, 457 S.E.2d at 621. *See also State v. Adams,* 291 S.C. 132, 352 S.E.2d 483 (1987) (determination of probable cause depends on totality of circumstances).

In *State v. Dupree,* 319 S.C. 454, 462 S.E.2d 279 (1995), our Supreme Court discussed probable cause:

"In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." "And in determining whether the officer acted reasonably ... due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from facts in light of his experience." Mere suspicions of the officer will not support a finding of probable cause.

. . . .

... The "experience of a police officer is a factor to be considered in the determination of probable cause, ... but the relevance of the suspect's conduct should be sufficiently articulable that its import can be understood by the average reasonably prudent person."

*Dupree,* 319 S.C. at 458–59, 462 S.E.2d at 282 (citations omitted).

### b. Plain View Exception

The State maintains the pack of cigarettes was in "plain view" in Minor's T-shirt pocket when seized and the marijuana was then immediately apparent. Under the plain view doctrine, an officer may make a warrantless seizure of an item in plain view if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence was viewed; (2) the incriminating character of the item was immediately apparent; and (3) the officer had a lawful right of access to the object itself. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). This doctrine is

applicable even when the discovery of the item is *not* inadvertent. *Id.*

Although it is against the law for someone to provide cigarettes to a minor, it is not against state law for a minor to possess cigarettes.[4] Therefore, the initial intrusion by Lt. Brown into Minor's pocket to obtain the cigarette pack was not lawful as no crime had been committed by Minor. As a result, the plain view exception is not applicable and the search was unjustified.

In discussing the interplay *inter sese* of the officers' statutorily required responsibilities and school policy, Chief Judge Howell states: "It would be an absurd conclusion indeed to hold otherwise...."

I strongly disagree with the statement it would be "absurd" to hold otherwise. Under a reasonable and commonsensical approach, I do hold otherwise. The officers took this minor from a zone of legal safety to the geographical position of law violator. Until the minor entered school property in the officers' vehicle, the cigarettes were not contraband. The cigarettes were *not* contraband under the law, whether analyzed under the traditional legal sense or under strict constitutional scrutiny. The character of the cigarettes did not suddenly change from "relatively innocent cigarettes" to a "major obstacle" to law enforcement duties. South Carolina Code Ann. § 20-7-600(A) (1976) (now repealed) does *not* save the search activity in this case. Every participant in this case agrees Thomas D. was properly in custody.

## CONCLUSION

The family court erred in failing to grant Minor's motion to suppress the evidence. The law enforcement officer did not have probable cause to search the shirt pocket of Minor to obtain the cigarette pack. Because the initial search violated the Fourth Amendment, the discovery of the marijuana was

---

4. *Cf.* S.C.Code Ann. §§ 20-7-8920 and -8925 (Supp.1996) (it is a violation of state law for a minor to purchase or possess beer, wine, or alcoholic beverages).

inadmissible as "fruit of the poisonous tree." [5]   Accordingly, I would reverse the family court's order denying Minor's motion to suppress and remand for a new trial.

---

**5.** *See State v. Copeland,* 321 S.C. 318, 468 S.E.2d 620 (1996) ("fruit of the poisonous tree" doctrine provides evidence must be excluded if it would not have come to light but for illegal actions of police, and evidence has been obtained by exploitation of that illegality) (*citing Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).