2490

The STATE, Appellant v. Marcus A. FOWLER, Respondent.
(471 S.E. (2d) 706

Court of Appeals

---

*Solicitor David P. Schwacke* and *Assistant Solicitor Amie L. Clifford,* North Charleston, *for appellant.*

*Assistant Appellate Defender Robert M. Pachak,* of the *S.C. Office of Appellate Defense,* Columbia, *for Respondent.*

Heard Jan. 11, 1996.

Decided March 25, 1996; Reh. Den. June 20, 1996.

CONNOR, Judge:

The State charged Marcus A. Fowler with possession of a concealed weapon, possession of crack cocaine with intent to distribute, and possession of crack cocaine with intent to dis-

tribute within proximity of a school. Fowler moved to suppress evidence found on him when he was arrested. The circuit court granted the motion, holding the stop and search of Fowler unconstitutional. The State appeals. We affirm.

## FACTS

On March 8, 1994, at approximately 1:20 a.m., Officers Timothy J. Blair and Richard G. Campbell were routinely patrolling a "high drug area" in a marked police cruiser. Officer Blair saw Fowler come from the front yard of a suspected drug house. About fifteen minutes later, the officers saw Fowler again. Suspecting Fowler might be carrying a weapon, they stopped him and patted him down. They found a large, lockblade knife in one pants pocket, and $504.87 in cash in another. They arrested him for violating a city ordinance against carrying a concealed weapon. At the jail they conducted a strip search and found a clear plastic bag with crack cocaine wrapped around his penis.

Fowler moved to suppress evidence of the money and drugs found on him. The officers testified at the suppression hearing Fowler walked in a "suspicious manner," acted "kind of scared," and "appeared as if possibly he was [sic] trying to [elude] us." Their suspicions were also aroused because "he cut behind some houses" and "didn't come to the corner and make a right hand turn on the sidewalk like normal people would make that route . . . and then he got on the sidewalk and proceeded back on the sidewalk real fast—at a fast walk." They also said they knew he had a conviction for prior drug offenses[1] and "was known to carry weapons, and his company with suspected drug dealers and persons known to carry weapons." Also Officer Blair stated he had known Fowler for about two and one-half years, and normally when he ran into him on the street, Fowler waved or came over to talk to him.

The officers acknowledged they had stopped Fowler to do a field interview, part of a "pro-active" mission to prevent crime. One officer described "pro-active" as:

Pro-active is, we prevent crimes from occurring. We're out there to be seen, to stop and conduct field interviews,

---

[1] Fowler had one previous conviction for possession of crack cocaine.

find out who's who on the street and who lives where ...
There's nothing but drugs, prostitutes, murder[er]s,
rapists, stolen vehicles. Most individuals there do not
have a home and they stay with grandparents or in va-
cant houses. Our objective is to be in the field and build
profiles, which is to cruise the area—and if we see some-
thing that looks suspicious to try to figure out what it is.

The officer acknowledged Fowler, who lived three blocks
from where he was first seen that night, did not do anything
to make the police believe he was armed or involved in drug
activity.

After hearing this testimony, the judge granted Fowler's
motion to suppress the evidence. He found both the police
stop and the frisk unconstitutional under *Terry v. Ohio*, 392
U.S. 1, 88 S.Ct. 1868, 20 L.Ed. (2d) 889 (1968).

## ANALYSIS

The State argues the trial court erred in finding there was
no reasonable suspicion for the police to stop Fowler.

The police may stop, and briefly detain, a person for in-
vestigative purposes when an officer has a reasonable
suspicion supported by articulable facts the person is
involved in criminal activity. *State v. Morris*, 312 S.C. 116, 439
S.E. (2d) 291 (Ct. App. 1993); *State v. Foster*, 269 S.C. 373, 237
S.E. (2d) 589 (1977), *citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct.
1868, 20 L.Ed. (2d) 889 (1968); *State v. Robinson*, 306 S.C. 399,
412 S.E. (2d) 411 (1991) (to justify a brief stop and detention,
the police officer must have a reasonable suspicion the person
has been involved in criminal activity); *State v. Gilbert*, 273
S.C. 690, 258 S.E. (2d) 890 (1979) (the officer must have an "ar-
ticulable and reasonable suspicion" of criminal activity to stop
a person), *overruled on other grounds by State v. Torrence*,
305 S.C. 45, 406 S.E. (2d) 315 (1991).

Here the facts do not support the State's position the offi-
cers had an articulable suspicion Fowler was involved in crim-
inal activity. The officers did not even see Fowler throw any-
thing down. The trial judge found he "most likely disappeared
behind the nearby houses to follow well-worn paths across
broken fences" in his own neighborhood. The officers, who
knew Fowler had a prior drug conviction, basically made

broad generalizations about his demeanor as they saw him leaving the curtilage of a suspected drug house.

We note we do not reach the issue of whether the ■ search was constitutional because we affirm the suppression of the evidence based on an unconstitutional stop. However, even if the *Terry* stop were proper, before the police may frisk a defendant, they must have a reasonable belief the defendant is armed and dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed. (2d) 238 (1979). In other words, a reasonable person in the position of the officer must believe the frisk was necessary to preserve the officer's safety. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. (2d) 889 (1968). An officer must be able to specify the particular facts on which he or she based his or her belief the suspect was armed and dangerous. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. (2d) 917 (1968) (an officer is not entitled to seize and search every person on the street; mere knowledge of the suspect being a known narcotics dealer who put his or her hand into a pocket as the police approached does not provide justification. *cf. United States v. Moore.*, 817 F. (2d) 1105 (4th Cir. 1987) (justification found where suspect was observed in the vicinity of a building late at night, shortly after the alarm sounds, and the street is dark, the officer is alone, and the suspected crime is burglary), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed. (2d) 396 (1987).

Although one officer testified Fowler had a history of ■ possessing weapons, Fowler had no prior weapons charges. Moreover, during previous searches, the police had not found weapons on Fowler. Another officer testified Fowler did not do anything the night of the arrest to make him think Fowler might be armed. These facts do not articulate a reasonable suspicion the officers believed the frisk was necessary to protect themselves or others.

Affirmed.

HOWELL, C.J., and CURETON, J., concur.