544 S.E.2d 290

The STATE, Respondent,

v.

Ronald L. WOODRUFF, Appellant.

No. 3315.

Court of Appeals of South Carolina.

Heard Jan. 9, 2001.
Decided March 12, 2001.
Rehearing Denied April 23, 2001.

538

Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Senior Assistant Attorney

General Charles H. Richardson, all of Columbia; and Solicitor George M. Ducworth, of Anderson, for Respondent.

ANDERSON, Judge:

Ronald L. Woodruff appeals his conviction for trafficking in crack cocaine. Woodruff contends the trial court erred in denying his motion to suppress evidence pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We reverse.

## *FACTS/PROCEDURAL BACKGROUND*

At the suppression hearing, the trial court viewed two police video tape recordings which depicted a June 4, 1998 traffic stop and thirty minute detention. One of the video tapes came from Officer Matthew Durham's patrol car. The second video tape was obtained from Officer James Littleton's patrol car. Both officers testified at trial regarding the detention. The tapes, together with the testimony, reveal the following.

At approximately 10:22 a.m. on June 4, 1998, Officer Matthew Durham, with the Anderson County Sheriff's Department, stopped a vehicle for speeding. The driver of the automobile was Alex Graham. One of the vehicle's windows was broken. Shortly after Officer Durham stopped the vehicle, Officer James Littleton arrived on the scene. Woodruff was a passenger in the vehicle. Officer Durham asked to see Graham's driver's license or identification, but Graham was unable to produce either. Graham told Officer Durham his last name was "Harriston" and provided an address and date of birth. Graham informed Officer Durham that he and Woodruff had been to Atlanta to "see some girls" and the vehicle belonged to Woodruff. Officer Durham called in the information Graham provided for verification, along with the automobile's tag number. Officer Durham testified the resulting report indicated the car belonged to Robert Moore, who had been reported missing.

According to Officer Durham, Woodruff, when questioned, declared he owned the automobile, but he was unable to produce a registration for the car. Upon further questioning, Woodruff indicated he and Graham had taken Graham's girl-

friend to Atlanta to "drop her off." Officer Durham stated Woodruff provided several different names during the stop.

About 10:34 a.m., Officer Durham issued Graham a warning ticket for speeding and asked him for permission to search the car. Graham consented to the search.

At approximately 10:35 a.m., prior to the vehicle search, Woodruff got out of the car. Officer Durham conducted a pat-down on both Graham and Woodruff. Neither search revealed weapons. The vehicle search, which lasted approximately ten minutes, produced a small set of scales and a number of identification cards, none of which depicted either Graham or Woodruff. Officer Durham stated Woodruff claimed to be one of the persons pictured on one of the identification cards, but the claim proved to be false.

After the vehicle search, Officer Durham searched Woodruff a second time. On direct examination, Officer Durham gave the following account of the second search:

A. At that time after all the names and anything was adding up—kept finding different IDs, the inconsistencies with their stories, the busted window,—at that time I did a more thorough search on the passenger using my hands and went down through his groin area and at that time I felt a bulge in his groin area.

Q. And what did you do when you felt that bulge?

A. Asked the subject what was in his pants.

Q. And what did he tell you?

A. He pulled his britches out and at that time I could visually see the cocaine in his pants.

Q. Did you remove it?

A. No, ma'am.

Q. Who removed it?

A. I asked the subject to remove it for me.

On cross-examination, Officer Durham testified as follows regarding the second search:

A. At that time we started finding more IDs. I think he produced the ID and we got to finding IDs in the car. The stories that they were giving weren't adding up as to where they said they were going and where they

were coming from and the window being busted out of the car. Supposedly now he's a missing person out of North Carolina, and then he goes from there to that he's not even the owner of the car—At that time I decided I may have missed something, so, I searched him again.

Q. Okay, when you patted him down the first time, you didn't find any weapons?

A. No, sir.

Q. You didn't expect to find any weapons when you patted him down again, did you?

A. At that time I wasn't looking for weapons.

Q. Well, what were you looking for?

A. I was looking to see if there was any more IDs or anything else on him that made me believe that he isn't who he says he is.

Q. And the second time you searched him this was a more extensive search, wasn't it?

A. Yes, it was.

. . . .

Q. But,—you felt a bulge in his pants.

A. That's correct.

Q. Okay, did that bulge feel like a knife?

A. A knife?

Q. Yeah.

A. No.

Q. Did it feel like a gun?

A. No.

Q. Did it feel like brass knuckles?

A. No.

Q. Did it feel like any type of weapon?

A. No.

Q. What did it feel like?

A. At the time I wasn't sure; that's why I asked him what he had in his pants and at that time he pulled his waistband out and when he did that I looked down in

his pants and you could visually see the cocaine in the bag.

Approximately thirty minutes elapsed between the time Officer Durham made the traffic stop and the time he conducted the second search of Woodruff. The material seized from Woodruff was determined to be 30.34 grams of crack cocaine.

## *LAW/ANALYSIS*

Woodruff argues the trial court erred in refusing to suppress the crack cocaine because it was seized pursuant to an unlawful and unreasonable thirty minute *Terry* search. We agree.

### I. Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Fourth Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific Ry. Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734, 737 (1891). It has, however, long been recognized that not all personal encounters between policemen and citizens involve "seizures" of persons thereby bringing the Fourth Amendment into play. *State v. Foster,* 269 S.C. 373, 237 S.E.2d 589 (1977); *State v. Blassingame,* 338 S.C. 240, 525 S.E.2d 535 (Ct.App.1999). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)(quoting *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 96 S.Ct. 3074, 3081–82, 49 L.Ed.2d 1116, 1126 (1976)).

■ A person has been "seized" within the meaning of the Fourth Amendment "whenever a police officer accosts [the] individual and restrains his freedom to walk away." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968). *See also Sikes v. State,* 323 S.C. 28, 30, 448 S.E.2d 560, 562 (1994)("An individual is 'seized' when an officer restrains his freedom, even if the detention is brief and falls short of an arrest."). That is, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16.

■ In determining whether an encounter between a law enforcement official and a citizen constitutes a seizure, thereby implicating Fourth Amendment protection, the correct inquiry is whether, considering all of the circumstances surrounding the encounter, a reasonable person would have believed he was not free to leave. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. So long as the person approached and questioned remains free to disregard the officer's questions and walk away, there has been no intrusion upon that person's liberty or privacy and, therefore, no constitutional justification for the encounter is necessary. *Id. See also Foster,* 269 S.C. at 379, 237 S.E.2d at 591 (person has not been seized where he is neither detained nor frisked and remains free to refuse to cooperate with enforcement officers).

The Supreme Court has often observed that searches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " *Thompson v. Louisiana,* 469 U.S. 17, 20, 105 S.Ct. 409, 410, 83 L.Ed.2d 246, 250 (1984) (per curiam) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (footnotes omitted)). *See also Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside judicial process, without prior approval by magistrate or judge, are per se unreasonable, subject only to specifically established exceptions). The Court recognized one such exception in

*Terry v. Ohio,* wherein the Court held "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

■ A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *State v. Robinson,* 306 S.C. 399, 412 S.E.2d 411 (1991); *Blassingame,* 338 S.C. at 248, 525 S.E.2d at 539. *See also State v. Foster,* 269 S.C. 373, 378, 237 S.E.2d 589, 591 (1977) ("It is recognized that the police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that he is involved in criminal activity.").

■ The term "reasonable suspicion" requires a particularized and objective basis that would lead one to suspect another of criminal activity. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Lesley,* 326 S.C. 641, 486 S.E.2d 276 (Ct.App.1997). In determining whether reasonable suspicion exists, the whole picture must be considered. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Blassingame,* 338 S.C. at 248, 525 S.E.2d at 539. If the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances. *Blassingame,* 338 S.C. at 248, 525 S.E.2d at 539; *State v. Kirkpatrick,* 320 S.C. 38, 462 S.E.2d 884 (Ct.App.1995).

■ Generally, the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). *See also Knight v. State,* 284 S.C. 138, 325 S.E.2d 535 (1985) (officer may stop automobile and briefly detain occupants, even without probable cause to arrest, if he has reasonable suspicion occupants are involved in criminal activity).

Expressly recognizing the risk involved when a police officer approaches a person seated in an automobile, the United States Supreme Court articulated: "[O]nce a motor vehicle has been lawfully detai[n]ed for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331, 337 n. 6 (1977). Applying its decision in *Terry,* the Supreme Court in *Mimms* ruled that, subsequent to a valid *Terry* stop for a traffic violation, a police officer may search the individual for weapons where the officer has reason to believe the person is armed and dangerous. *Mimms,* 434 U.S. at 111–12, 98 S.Ct. at 334, 54 L.Ed.2d at 337. *See also Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (under *Terry* doctrine, law enforcement officer, for his own protection and safety, may conduct patdown to find weapons he reasonably believes or suspects are in possession of person he has stopped). Further, reasoning that the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car," the Supreme Court concluded the *Mimms* rule applies to passengers as well as drivers. *Maryland v. Wilson,* 519 U.S. 408, 414, 117 S.Ct. 882, 887, 137 L.Ed.2d 41, 48 (1997).

In assessing whether a suspect is armed and dangerous, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. *See also Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (officer must be able to specify particular facts on which he based his belief suspect was armed and dangerous; officer is not entitled to seize and search every person on the street; mere knowledge of suspect being known narcotics dealer who put his or her hand into a pocket as police approached does not provide

justification). *Cf. United States v. Moore,* 817 F.2d 1105 (4th Cir.1987) (justification found where suspect was only person observed in vicinity of building late at night, shortly after alarm sounded, and street was dark, officer was alone, and suspected crime was burglary); *State v. Fowler,* 322 S.C. 263, 471 S.E.2d 706 (Ct.App.1996) (in order to support his decision to "frisk" defendant subsequent to valid *Terry* stop, officer must be able to specify particular facts on which he based his belief suspect was armed and dangerous; reasonable person in officer's position must believe frisk was necessary to preserve officer's safety).

■■ The scope of a search authorized by *Terry* is limited. In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), a police officer stopped a suspect and conducted a patdown search. Although the search did not reveal any weapons, the officer conducting the search felt a small lump in the suspect's nylon jacket. The officer testified: " '[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane.' " *Id.* at 369, 113 S.Ct. at 2133, 124 L.Ed.2d at 341. The officer then reached into the suspect's pocket and retrieved a small plastic bag containing one-fifth of one gram of crack cocaine.

On appeal, the Supreme Court held that police officers may seize nonthreatening contraband detected through the sense of touch during a protective patdown search permitted by *Terry,* but only if the officers' search stays within the bounds marked by *Terry.* *Id.* at 373, 113 S.Ct. at 2135–36, 124 L.Ed.2d at 344. Specifically, the Court explained:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Further, the *Dickerson* Court instructed:

"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams [v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972) ]. Rather, a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry, supra,* at 26, 88 S.Ct. at 1882, 20 L.Ed.2d 889; *see also Michigan v. Long,* 463 U.S. 1032, 1049, and 1052, n. 16, 103 S.Ct. 3469, 3480–81, and 3482, n. 16, 77 L.Ed.2d 1201 (1983); *Ybarra v. Illinois,* 444 U.S. 85, 93–94, 100 S.Ct. 338, 343–44, 62 L.Ed.2d 238 (1979). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York,* 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

*Dickerson,* 508 U.S. at 373, 113 S.Ct. at 2138, 124 L.Ed.2d at 344.

The courts of this state have recognized and applied the principle that law enforcement officers are not granted, under the purview of *Terry,* a general warrant to rummage and seize at will,[1] and that any evidence stemming from an unlawful detention must be excluded as "fruit of the poisonous tree." The case of *Sikes v. State,* 323 S.C. 28, 448 S.E.2d 560 (1994), involved a traffic stop which resulted in a twenty minute detention during which Sikes, the passenger of a vehicle, was searched twice before being placed in a police car. When Sikes got out of the police car, an officer found a bag of crack cocaine on the back seat. Our Supreme Court determined:

When an officer stops a vehicle for a traffic violation, he may *briefly* detain the vehicle and its occupants while he examines the vehicle registration and the driver's license. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d

---

1. *See Texas v. Brown,* 460 U.S. 730, 748, 103 S.Ct. 1535, 1546–47, 75 L.Ed.2d 502, 518 (1983) (Stevens, J., concurring in judgment) (Supreme Court "has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.").

660 (1979) (emphasis added). Although Sikes does not challenge the officers' initial stop of the automobile, Sikes claims that the officers improperly seized him to run a warrant check with no reasonable cause. An individual is "seized" when an officer restrains his freedom, even if the detention is brief and falls short of arrest. *The scope and duration of seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In South Carolina, we have gone a little further by holding that an officer may stop a car and briefly detain the occupants if he has a *reasonable suspicion* that the occupants are involved in *criminal activity. Knight v. State,* 284 S.C. 138, 325 S.E.2d 535 (1985) (emphasis added).

. . . .

Here the officers' "reasonable suspicion" was that the car was either stolen or that the driver was uninsured. Under *Knight, supra,* neither of these reasons gave the officers the right to seize or question the car's passenger. Moreover, even assuming arguendo that this stop was reasonable, certainly a twenty minute detention while the officers "went fishing" for evidence of some crime was not brief within the definition announced in *Prouse, supra,* or in *Knight, supra. See also State v. Damm,* 246 Kan. 220, 787 P.2d 1185 (1990) (seizure of occupants of the vehicle while routine records checks were made of the occupants was unreasonable); *State v. Johnson,* 805 P.2d 761 (Utah 1991) (the leap from asking for the passenger's name and date of birth to running a warrants check on her severed the rational inference from specific and articulable facts and degenerated into an attempt to support an as yet unparticularized suspicion or hunch).

The detention and arrest of the Petitioner was unlawful; therefore, the evidence of the Petitioner's possession of crack cocaine would have been inadmissible as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Plath,* 277 S.C. 126, 284 S.E.2d 221 (1981).

*Sikes,* 323 S.C. at 31–32, 448 S.E.2d at 562–63 (emphasis added).

 The reasonableness of an "on-the-scene" warrantless seizure depends on the balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers. *See State v. Foster,* 269 S.C. 373, 237 S.E.2d 589 (1977) (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). The applicable balancing test employs judicial review of all of the circumstances including but not limited to: (1) the seriousness of the offense; (2) the degree of likelihood that the person detained may have witnessed or been involved in the offense; (3) the proximity in time and space from the scene of the crime; (4) the urgency of the occasion; (5) the nature of the detention and its extent; (6) the means and procedures employed by the officer; and (7) the presence of any circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant. *United States v. Holland,* 510 F.2d 453 (9th Cir.1975); *State v. Rodriquez,* 323 S.C. 484, 476 S.E.2d 161 (Ct.App.1996).

 Given the intrusive nature of a seizure and considering the fact that on occasion a person may be wrongfully stopped, the United States Supreme Court has held, as has the Supreme Court of this State, that the scope and duration of a *Terry* detention "must be strictly tied to and justified by the circumstances which rendered its initiation proper." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983); *Sikes,* 323 S.C. at 30, 448 S.E.2d at 562. The burden falls upon the State to "demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Royer,* 460 U.S. at 500, 103 S.Ct. at 1326, 75 L.Ed.2d at 238.

In *State v. Rodriquez,* this Court considered the scope of a thirty minute detention. The Court discussed the background of a train trip by Rodriquez resulting in his detention and explicated:

> Even assuming an investigative detention was proper at that point, we find a thirty minute detention while the officers attempted to elicit incriminating evidence from Rodriquez is the type of fishing expedition denounced by our Supreme Court in *Sikes,* 448 S.E.2d at 563 (assuming

arguendo, that stop of motor vehicle passengers was reasonable, twenty minute detention while officers "went fishing" for some evidence of crime was not brief). In light of the foregoing, we hold the intrusion of the officers in this case was not reasonable.

*Rodriquez,* 323 S.C. at 494, 476 S.E.2d at 166–67. *See also United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 615 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, [it is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").

### II. Analysis

■ In the instant case, Woodruff moved to suppress the crack cocaine Officer Durham found in Woodruff's pants as poisonous fruit of an improper frisk. After viewing police video tapes of the incident, the trial court ruled the cocaine admissible, concluding that although the second search was questionable, the officers acted reasonably in light of the developing scenario. We hold the evidence was improperly admitted.

Because Officer Durham observed Graham speeding, he was justified in conducting a traffic stop. Once Graham was lawfully detained for speeding, Officer Durham could ask Woodruff to step out of the vehicle. Graham consented to a search of the vehicle. There has been no challenge as to the propriety of Officer Durham's initial patdown of Woodruff in order to search for weapons. Thus, the dispositive issue before us is whether Officer Durham discovered the contraband on Woodruff's person while acting within the lawful parameters of *Terry.*

Officer Durham's second search of Woodruff was, without question, unrelated to any reasonable apprehension Woodruff was armed with a weapon. Officer Durham had already searched Woodruff for weapons and admitted he was not looking for weapons during the second search. Rather, because he feared he may have "missed something" the first time he searched Woodruff, Officer Durham decided to conduct a second, more thorough search for evidence of a crime.

In so doing, Officer Durham acted outside the "strictly circumscribed" search for weapons authorized in *Terry*. *See Terry,* 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. In our view, this behavior constitutes the very type of evidentiary search, or "fishing expedition," *Terry* expressly refused to authorize and which has been condemned time and again by the United States Supreme Court, as well as the courts of this State.

## CONCLUSION

We hold the second search of Woodruff was constitutionally violative. Therefore, evidence of his possession of crack cocaine was inadmissible as fruit of the poisonous tree. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Sikes v. State,* 323 S.C. 28, 448 S.E.2d 560 (1994). Accordingly, Woodruff's conviction for trafficking in crack cocaine is

**REVERSED.**

HEARN, C.J., and STILWELL, J., concur.