679 S.E.2d 187

**The STATE, Respondent,**

v.

**Glenn Ireland CORLEY, Appellant.**

**No. 4544.**

Court of Appeals of South Carolina.

Heard March 17, 2009.

Decided May 14, 2009.

Rehearing Denied June 29, 2009.

C. Rauch Wise, of Greenwood, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

HUFF, J.:

Glenn Ireland Corley was indicted for possession of crack cocaine. Following a bench trial, Corley was convicted as charged and sentenced to three years, suspended upon sixty days with three years of probation. Corley appeals arguing the trial court erred in denying his motion to suppress the evidence. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In the early morning hours of September 24, 2006, Officer Nicholas Futch with the Greenwood City Police Department was conducting surveillance of a residence on Owen Street that was known to have a high level of drug activity. Several cases had been "made" and a number of search warrants had been executed at that particular residence. Futch, who was in the woods on foot at the time, watched from a distance of approximately fifty yards from the home. Officer Futch had observed the house for five to ten minutes when, at around 2:50 a.m., he observed a man approach the location in his vehicle. The man exited his vehicle, walked to the rear of the residence, remained there for less than two minutes, and then returned to his vehicle and left. Officer Futch followed behind this vehicle in his patrol car for a brief period, and initiated a traffic stop when the individual failed to use a turn signal.

Officer Futch approached the vehicle, identified himself, and requested the driver's license, insurance, and registration from the driver, who was identified as Corley. The officer observed Corley was nervous and short of breath, avoided eye contact with him, and appeared fidgety. Corley provided the officer with the documents he requested. Officer Futch asked Corley to step out of his car due to safety concerns based on Corley's nervousness. As the two stepped to the rear of the vehicle, Officer Futch engaged Corley in conversation about where he had just been. Corley told the officer he had been at the home of a friend, Beth Cronnick. Officer Futch had personal knowledge Cronnick did not live at the house Corley had just left, so he asked Corley to point out the home to him. After Corley pointed in a general area, the officer asked him for directions to the house. Corley's answer indicated an area on a different street, about a block away from the actual

residence. He described it as an older style white home; however the actual home was a "dark gray, almost purple house." At that time, officer Futch advised Corley he knew he was being dishonest and that he had observed Corley leave a house he knew to have high drug activity. He then asked Corley if he had gone to the residence to purchase illegal drugs, and Corley responded that he had. With further questioning, Corley indicated the substance was crack cocaine, and that he did not have it on him, but that it was in his vehicle in the cup holder. Officer Futch retrieved a small off-white rock-like substance from the cup holder and placed Corley under arrest for possession of crack cocaine.

■ The officer stated he did not give Corley his registration and license back until after the arrest. He also issued Corley a verbal warning for the traffic violation subsequent to the arrest. From the time Corley's vehicle came to a stop until he was placed under arrest was less than ten minutes, and was likely only five to seven minutes. Officer Futch acknowledged that when Corley left the residence, it was his intent to stop him because he was suspicious Corley was involved in a drug transaction. His suspicions of illegal drug activity were aroused by the fact that he observed Corley at a residence known for high drug activity, that Corley went to the rear of the residence, that he remained there for only a very brief time, and this occurred in the middle of the night. Officer Futch agreed that he had all the things he needed to write Corley a ticket for the traffic violation, but instead proceeded to ask Corley questions about his observations at the residence. Officer Futch did not advise Corley of his *Miranda* rights [1] prior to questioning him during the traffic stop.

When the State sought to admit the crack cocaine into evidence, Corley objected asserting it was the result of an illegal search and seizure. Corley moved to suppress the evidence asserting two prongs. First, he argued, under *State v. Fowler*, 322 S.C. 263, 471 S.E.2d 706 (Ct.App.1996), there

---

1. A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

was insufficient reason to believe he had committed any crime other than the traffic violation, and the inquiry from the officer went beyond the purpose of the initial stop with this further detention violating his fourth amendment rights under *State v. Williams,* 351 S.C. 591, 571 S.E.2d 703 (Ct.App.2002). Second, Corley maintained, assuming arguendo there was sufficient reason to believe he had committed another crime, the inquiries of the officer amounted to custodial interrogation. He therefore asserted because he was not advised of his *Miranda* rights, his statements and the evidence obtained as a result thereof should be suppressed. The State argued *Williams* was ·distinguishable because in that case, the traffic stop was completed before the questioning, as the officer had already returned the defendant's license and registration and issued the citation. The State further distinguished *Fowler,* arguing the facts were stronger to support reasonable suspicion of drug activity in this case. The State also maintained it was not necessary that Corley be advised of his *Miranda* rights because the questioning occurred during a routine traffic stop.

The trial court determined it was not going to get into whether there was probable cause for the traffic stop because, based on the testimony of the officer, the real reason for the stop was the suspected drug activity. Accordingly, the court found the question was whether the officer had probable cause to stop Corley in consideration of what he observed at the house in regard to drug activity. Noting that Officer Futch was conducting surveillance on a drug house, the time was 2:50 in the morning, and Corley went to the back of the house and stayed for approximately two minutes before leaving, the court determined there was probable cause to stop Corley on that basis and therefore denied Corley's motion to suppress. Counsel for Corley then requested a ruling on the *Miranda* issue. The trial court ruled the questioning was pursuant to an investigation into the drug activity and *Miranda* was therefore not implicated.

After submitting a drug analysis into evidence over Corley's objection, the State rested. Corley presented no evidence in his defense. Based on the testimony of the officer, Corley's stipulation as to chain of custody and the validity of the chemist's report, and the denial of the motion to suppress, the

trial court found Corley guilty as charged. This appeal follows.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only. We are bound by the trial court's factual findings unless they are clearly erroneous. This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citations omitted). In Fourth Amendment search and seizure cases, our review is limited to determining whether any evidence supports the trial court's finding. *State v. Banda,* 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). Upon such review, an appellate court may reverse only when the trial court's decision is clear error. *State v. Pichardo,* 367 S.C. 84, 95, 623 S.E.2d 840, 846 (Ct.App.2005). Under the "clear error" standard, the appellate court will not reverse a trial court's finding of fact simply because it may have decided the case differently. *Id.* at 96, 623 S.E.2d at 846. Additionally, "[a]ppellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial judge is supported by the record." *State v. Evans,* 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003).

## LAW/ANALYSIS

Corley argues the trial court erred in failing to suppress the evidence seized because (1) a custodial interrogation was conducted by the investigating officer without advising Corley of his *Miranda* rights, (2) the officer detained Corley longer than was necessary to write the traffic ticket thereby eliciting an incriminating statement, and (3) the arresting officer did not have a sufficient factual basis to stop Corley independently for alleged drug activity where he never observed a drug transaction. Because we find there is evidence to support the trial court's ruling that Officer Futch had probable cause to stop Corley and investigate for drug activity, we find no error.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend. IV. "The Fourth Amendment does not proscribe all contact between police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976)).

The stopping of a vehicle and the detention of its occupants constitutes a seizure and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Therefore, an automobile stop implicates the Fourth Amendment prohibition against unreasonable searches and seizures, imposing a standard of 'reasonableness' upon the exercise of discretion by state law enforcement officials." *State v. Banda*, 371 S.C. 245, 639 S.E.2d 36. 252. 371 S.C. 245, 639 S.E.2d 36, 40 (2006). "A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity." *State v. Woodruff*, 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App. 2001). "The term 'reasonable suspicion' requires a particularized and objective basis that would lead one to suspect another of criminal activity." *Id.* In determining whether reasonable suspicion exists, the circumstances must be considered as a whole. *Id.* If the officer's suspicions are confirmed or further aroused, the stop then may be prolonged and the scope enlarged. *Id.* Generally, the decision to stop an automobile is reasonable when the police have probable cause to believe a traffic violation has occurred. *Banda*, 371 S.C. at 252, 639 S.E.2d at 40.

In this case, it is undisputed Officer Futch acted lawfully in stopping Corley's automobile for the traffic violation. Additionally, a minor traffic violation arrest will not be rendered invalid by the fact it was "a mere pretext for a narcotics search." *Arkansas v. Sullivan*, 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001); *Whren v. United*

*States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *accord United States v. Stachowiak,* 521 F.3d 852, 855 (8th Cir.2008). Thus, the subjective intentions of an officer "play no role in ordinary, probable-cause Fourth Amendment analysis." *Banda,* 371 S.C. at 252 n. 3, 639 S.E.2d at 40 n. 3. Corley contends, however, Officer Futch did not have reasonable suspicion to investigate for a possible drug violation. He argues the circumstances of his case, including his presence in an area of suspicious activity but without observation of a drug transaction, rendered his stop and search unlawful pursuant to *State v. Fowler,* 322 S.C. 263, 471 S.E.2d 706 (Ct.App.1996). We disagree.

In analyzing investigative detentions, courts employ the standard articulated by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *State v. Nelson,* 336 S.C. 186, 192, 519 S.E.2d 786, 789 (1999). "Under this standard, 'a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke that suspicion.' " *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Thus, the police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity. *State v. Abrams,* 322 S.C. 286, 288, 471 S.E.2d 716, 717 (Ct.App.1996). The scope and duration of a *Terry* detention must be strictly tied to and justified by the circumstances that rendered its initiation proper. *State v. Rodriquez,* 323 S.C. 484, 493, 476 S.E.2d 161, 166 (Ct.App.1996). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer,* 468 U.S. at 439, 104 S.Ct. 3138. However, the detainee is not obliged to respond and unless his answers provide probable cause to arrest him, he must then be released. *Id.* at 439–40, 104 S.Ct. 3138.

In *Fowler,* two police officers were on a routine patrol of a "high drug area" when Fowler was observed coming from the front yard of a suspected drug house. Some fifteen minutes later, the same officers saw Fowler again. Suspecting he

might be carrying a weapon, they stopped him and patted him down, finding a large knife and a significant sum of cash in his pockets. After he was arrested for carrying a concealed weapon, a jail strip-search revealed Fowler had crack cocaine on his person. Fowler moved to suppress the evidence. During the suppression hearing, the officers testified their suspicions were aroused based on Fowler walking in a suspicious manner, appearing as if he was trying to elude them and cutting back behind some houses. Additionally, the officers knew Fowler had a prior drug conviction and was known to carry weapons. *Fowler,* 322 S.C. at 265, 471 S.E.2d at 707. The trial court granted Fowler's motion finding the stop and frisk were unconstitutional. *Id.* at 266, 471 S.E.2d at 707–08. This court affirmed, holding the facts did not support the State's position that the officers had an articulable suspicion Fowler was involved in criminal activity, noting the officers did not see a drug transaction take place nor observe Fowler throw anything down, but basically made broad generalizations about his demeanor as they observed him leaving the curtilage of a suspected drug house. *Id.* at 266–67, 471 S.E.2d at 708.

We find *Fowler* to be distinguishable. Although both involved areas of high drug activity, the house in *Fowler* was only a *suspected* drug house while the residence in this case was a *known* drug house where several cases had been made and search warrants executed. Additionally, while observing this known drug house, the officer observed Corley walk to the rear of the residence, remain for a very short period of time, and then promptly return to his automobile. This all occurred in the early morning hours. Finally, in *Fowler* the officers acknowledged they stopped Fowler to do a field interview as part of a pro-active mission to prevent crime and that Fowler, who lived only three blocks from where he was first seen that night, "did not do anything to make the police believe he was armed or involved in drug activity." *Id.* at 266, 471 S.E.2d at 707. To the contrary, Officer Futch testified he was suspicious Corley was involved in illegal drug activity based on his observations of him at the known drug house.

The trial court concluded Officer Futch had probable cause to stop Corley and investigate for possible drug activity. In considering the circumstances as a whole, and in light of our

standard of review limiting us to determining whether any evidence supports the trial court's finding, we find no clear error in the trial court's determination that Officer Futch had probable cause to stop Corley and investigate based on his suspicion of drug activity.

■ Corley also contends the trial court erred in failing to suppress the evidence seized from his automobile because he was subjected to a custodial interrogation without the benefit of having been advised of his *Miranda* rights. He argues this was not a routine traffic stop, but that he was stopped for the purpose of being questioned about illegal drug activity. Corley asserts, because the police officer possessed his license and registration, he was not free to leave, and that this case is factually no different from an officer questioning a suspect about a crime for which he has probable cause to arrest the suspect. We disagree.

■ First, the law is clear that the police may, in an investigative detention, *briefly detain and question* a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity. As previously noted, there is evidence of record to support the trial court's determination Officer Futch had a reasonable suspicion, short of probable cause for arrest, that Corley was involved in criminal activity such that his brief detention and questioning was proper. We find it of no import that the detention was accomplished through a traffic stop. It is undisputed the officer acted lawfully in stopping the car for failure to use a turn signal. *See Banda,* 371 S.C. at 252, 639 S.E.2d at 40 (holding police acted lawfully in stopping car displaying stolen license tag in spite of evidence the officers were more interested in apprehending a drug target). Further, the United States Supreme Court has observed, even though few motorists would feel free to either disobey a police directive to pull over or to leave the scene of a traffic stop without permission to do so, "persons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of *Miranda,*" and "[o]nly if the motorist is detained 'to a degree associated with formal arrest' will he be entitled to the *Miranda* protections for in-custody interrogations." *United States v. Sullivan,* 138 F.3d 126, 130 (4th Cir.1998)

(quoting *Berkemer,* 468 U.S. at 440, 104 S.Ct. 3138). "Even 'drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes.'" *Id.* at 132 (quoting *U.S. v. Leshuk,* 65 F.3d 1105, 1109–10 (4th Cir.1995)). Thus, even though a motorist in a routine traffic stop may be detained and is not free to leave, such a motorist is not "in custody" for *Miranda* purposes. *Id.* at 130–31.

We disagree with Corley's assertion that this situation could not be considered a routine traffic stop because the real reason for the stop was for him to be questioned regarding possible drug activity. Our courts make no distinction based upon the subjective intentions of an officer in making a traffic stop, and evidence that the police were more interested in apprehending a drug target does not factor into a probable cause analysis in an otherwise valid stop. *Banda,* 371 S.C. at 252 n. 3, 639 S.E.2d at 40 n. 3; *Arkansas v. Sullivan,* 532 U.S. at 772, 121 S.Ct. 1876. We see no distinction between this situation, where the officer's suspicions arose prior to the stop, and one in which those suspicions arose during the stop. As the Fourth Circuit Court of Appeals observed in *United States v. Sullivan,* routine traffic stops are analogous to *Terry* stops, where no *Miranda* warnings are required, and "only when the motorist is detained to an extent analogous to an arrest" are *Miranda* warnings required. *United States v. Sullivan,* 138 F.3d at 131. While, without question, Officer Futch's intentions were to stop Corley and question him regarding possible drug activity, the detention of Corley at the time of questioning was not to such an extent as to be analogous to an arrest, but was akin to a *Terry* stop, for which no *Miranda* warnings are required. As in *United States v. Sullivan,* there is no indication here that the officer said anything or conducted himself in a way to suggest Corley was under arrest or was being detained as if he were under arrest. *Id.* at 132. Accordingly, we hold Corley was not in custody for purposes of *Miranda* while being questioned by Officer Futch.

In light of our disposition, we need not address Corley's remaining issue that Officer Futch seized Corley for longer than was necessary for the traffic stop, amounting to an illegal detention under *State v. Williams,* 351 S.C. 591, 571 S.E.2d

703 (Ct.App.2002). *See Futch v. McAllister Towing of George-town, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of prior issue is dispositive).

For the foregoing reasons, we affirm the trial court's denial of Corley's motion to suppress.

**AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.