**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Donald Marquice Anderson, Appellant.

Appellate Case No. 2012-212499

———————————

Appeal From Greenville County
G. Edward Welmaker, Circuit Court Judge

———————————

Unpublished Opinion No. 2014-UP-282
Heard June 17, 2014 – Filed July 9, 2014

———————————

**AFFIRMED**

———————————

Appellate Defender Carmen Vaughn Ganjehsani, Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mary Shannon Williams, both of Columbia, for Respondent.

———————————

**PER CURIAM:** The State indicted Donald Marquice Anderson for possession with intent to distribute cocaine base. Anderson moved to suppress the cocaine, arguing the detention and subsequent pat-down was unlawful under the Fourth Amendment. The trial court denied his motion after a pretrial hearing, and

following his bench trial, found him guilty as charged. On appeal, Anderson raises two issues to this court: (1) the police lacked reasonable suspicion to detain him and (2) the police did not have a reasonable belief that he was armed and dangerous to justify the pat-down. As to these two issues, we affirm.

Detective Keith Cothran of the Greenville Police Department obtained a search warrant for a house on 106 Dobbs Street based on its connection with drug transactions. At the suppression hearing, Det. Cothran testified drug "runners" used a footpath[1] near the house to sell drugs that came from 106 Dobbs. Based on his belief that the footpath was "associated with [the drug activity at] 106 Dobbs," Det. Cothran ordered officers "to secure and detain any persons located . . . [on] the [footpath]" while the search warrant was being executed.

Detectives Kevin Hyatt and Gary Rhinehart with the Greenville Police Department testified they were stationed at the footpath during the search and were ordered "to take control of any persons on the [footpath]" during the search of the house. According to Det. Hyatt, he saw Anderson and a woman "approximately half-way up the [footpath]" during the search. He claimed that when Anderson noticed the police stationed on the footpath, he "immediately veered to the right in a quick manner." Det. Rhinehart confirmed this, stating when Anderson noticed the officers, "he made an obvious gesture to divert his path from the way he was walking." Det. Hyatt ordered Anderson "to stop and get on the ground," and Det. Rhinehart handcuffed him. Det. Hyatt then performed a pat-down and found a plastic bag in Anderson's pocket containing crack cocaine.

Anderson asserted two grounds for suppressing the evidence at the pre-trial hearing. First, he argued Det. Cothran's order to Det's. Hyatt and Rhinehart that they seize any person on the footpath, apparently without suspicion of criminal activity, constituted "a warrantless search that required probable cause" because it "simply was not a *Terry*[2] stop." The trial court denied the motion on this ground, explicitly finding "that this was a *Terry* stop." We are unable to address the merits of the trial court's ruling on this argument, however, because it was not presented to this court on appeal. *See* Rule 208(b)(1)(B), SCACR ("[N]o point will be considered which is not set forth in the statement of the issues on appeal."); *S.C.*

---

[1] Det. Cothran, as well as the officers who testified at the hearing, referred to the footpath as "the cut."

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 659, 667 S.E.2d 7, 15 (Ct. App. 2008) ("[E]ven if an issue is preserved at the trial court level, it must still be properly raised and argued to the appellate court."). Instead, we are confined to addressing the issues appealed by Anderson: (1) whether the police had reasonable suspicion to detain him and (2) whether the police had a reasonable belief that he was armed and dangerous to justify the pat-down.

We find there is evidence to support the trial court's finding that Det. Hyatt had reasonable suspicion to justify the stop. *See State v. Taylor*, 401 S.C. 104, 108, 736 S.E.2d 663, 665 (2013) (stating "[a] trial court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence"); *State v. Corley*, 383 S.C. 232, 240, 679 S.E.2d 187, 191 (Ct. App. 2009), *aff'd as modified*, 392 S.C. 125, 708 S.E.2d 217 (2011) (stating an officer may detain a person "when [he] has a reasonable suspicion supported by articulable facts . . . that the person is involved in criminal activity"). Det. Hyatt possessed personal knowledge of the high-crime area in which Anderson was detained and its association with drug traffic. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) (stating "an area's propensity toward criminal activity is something an officer may consider" in determining the existence of reasonable suspicion, which includes personal knowledge that an area "ha[s] a large amount of drug traffic"). Specifically, he knew the footpath served as a thoroughfare for drug "runners" and was associated with the known drug activity at 106 Dobbs. *See Corley*, 383 S.C. at 242, 679 S.E.2d at 192 (relying on defendant being at a "*known* drug house where several cases had been made and search warrants executed" to find reasonable suspicion existed). Additionally, Det. Rhinehart testified Anderson was "coming from the area of the search warrant," and when he noticed the officers, he made a suspicious movement "to divert his path." *See Taylor*, 401 S.C. at 110, 736 S.E.2d at 666 ("Evasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a street corner encounter." (quoting *Lender*, 985 F.2d at 154)). Considering this evidence in combination, we find the evidence supports the trial court's finding that reasonable suspicion existed to detain Anderson. *See State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) ("In determining whether reasonable suspicion exists, 'the totality of the circumstances—the whole picture—'must be considered." (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695 (1981))).

Anderson cites *Bailey v. United States*, 133 S. Ct. 1031 (2013), to argue his detention was unlawful because the footpath was outside the scope of the search warrant. We find *Bailey* inapplicable. In that case, the Supreme Court considered the constitutionality of a detention incident to the execution of a search warrant and

explicitly declined to address whether the detention was justified by the existence of reasonable suspicion under *Terry*. *See* 133 S. Ct. at 1043 (stating the Court "expresses no view" as to whether "stopping [the defendant] was lawful under *Terry*").

We also find evidence to support the trial court's finding that Det. Hyatt had a reasonable belief that Anderson was armed and dangerous to justify the pat-down. *See Khingratsaiphon*, 352 S.C. at 69, 572 S.E.2d at 459 (stating an officer may conduct a pat-down for weapons when "the officer has reason to believe the person is armed and dangerous"). Our supreme court has recognized that because of the "indisputable nexus between drugs and guns," when an officer has reasonable suspicion that drugs are present, "there is an appropriate level of suspicion of criminal activity and apprehension of danger" to justify a pat-down of an individual. *State v. Banda*, 371 S.C. 245, 253, 639 S.E.2d 36, 40 (2006). Given (1) "the frequent association between drugs and guns," 371 S.C. at 254, 639 S.E.2d at 41, (2) the fact that the search warrant was being executed when the pat-down occurred, and (3) the officers' belief that the occupants of 106 Dobbs possessed weapons, we find it was reasonable for Det. Hyatt to conduct the pat-down. Additionally, we rely on Det. Hyatt's testimony that he performed the pat-down in search of weapons, not "narcotics or anything [else]."

Anderson asserts the pat-down was unlawful because at the hearing, Det. Hyatt agreed that he "didn't see anything that looked like a weapon on [Anderson]" when he ordered him to the ground. As expressed by our supreme court, "[i]n assessing whether a suspect is armed and dangerous, '[t]he officer need not be absolutely certain that the individual is armed.'" *Khingratsaiphon*, 352 S.C. at 69-70, 572 S.E.2d at 459 (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909). Instead, the test is whether an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts," create a reasonable "belief that his safety or that of others was in danger." *Id.* Based on our above analysis, we find the pat-down was justified by "specific and articulable facts" implicating Det. Hyatt's safety, as well as the safety of the other officers. *Id.*

**AFFIRMED.**

**FEW, C.J., and SHORT and GEATHERS, JJ., concur.**