THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Frankie Lee Dash,       
Appellant.
 
 
 

Appeal From Orangeburg County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP-438
Submitted April 18, 2003  Filed June 
 25, 2003 

AFFIRMED

 
 
 
Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John W. 
 McIntosh; Assistant Deputy Attorney General Charles H. Richardson; Assistant 
 Attorney General David A. Spencer, all of Columbia;  and Solicitor Walter M. 
 Bailey, Jr., of Summerville, for Respondent.
 
 
 

PER CURIAM: Frankie Lee Dash (Dash) appeals from his conviction for 
 armed robbery.  Dash contends the trial court erred by denying his motion to 
 suppress evidence seized pursuant to his arrest by the police.
FACTS
William Herndon, an elderly store clerk, saw three black men 
 enter Cherrys Package store.  One of the men, who was exceedingly tall, asked 
 for a bottle of vodka located high on a shelf.  When Herndon turned to retrieve 
 the bottle, another of the men, later identified by Herndon as Dash, pulled 
 a gun on him and forced him into the storeroom.  Dash sarcastically told Herndon 
 that everyone needs money at Christmas time and proceeded to rob him of $175.00 
 in valid U.S. currency and a single fake one million dollar bill from Herndons 
 wallet.  Dash threatened to blow Herndons brains out as Herndon begged for 
 his life.  The other men stole two guns and the money from the till.  After 
 the robbers fled, Herndon telephoned the police.
Overwrought by events, Herndon gave a general description to the 
 police that the gunman who robbed him was a black male approximately 56 tall.  
 Although he was unable to recall a more complete description, he assured the 
 policeman he would be able to recognize the gunman by sight.
Only minutes later, Officer Delvin Williams noticed Dash two blocks 
 from the store.  Dash met the description given by Herndon.  Officer Williams 
 approached Dash and explained to him that an armed robbery had just occurred 
 and that he fit the description of the perpetrator.  Accordingly, the Officer 
 asked Dash to accompany him back to the store to determine whether or not Herndon 
 could identify him.  The Officer reminded Dash that he was not under arrest.
Suddenly, Dash became agitated.  Officer Williams testified Dash 
 refused to make eye contact and attempted to get around him.  Dash moved in 
 a threatening poster, coming uncomfortably close to the Officer.  The Officer 
 responded by pushing Dash back.  Then Dash made a dash, running swiftly away.  
 As he attempted to flee, the Officer caught hold of his jacket and a gun fell 
 out of one of the pockets onto the pavement.  When the Policeman caught him 
 about a block away the two fought until Dash was placed in handcuffs.  On the 
 way back to the patrol car, Officer Williams discovered the gun lying on the 
 ground.  Dash was arrested and charged with simple assault. 
Herndon was able to make a positive identification of Dash as the 
 gunman only fifteen minutes after Dash left the store.  After a search of his 
 person, the Police discovered the wad of cash and the fake one million dollar 
 bill taken from Herndon.  The gun Dash dropped belonged to the storeowner, David 
 Cherry, and was one of the guns stolen from the store.
Prior to trial, Dash made a motion to suppress the gun and money 
 recovered during his arrest arguing it was discovered pursuant to an illegal 
 seizure.  An in camera hearing followed and the court denied the motion 
 to suppress. Dash was convicted of armed robbery and sentenced to twenty-two 
 years.
DISCUSSION
Dash contends the trial 
 court erred in denying his motion to suppress the evidence of the gun, cash 
 and the fake million dollar bill seized following his arrest arguing they were 
 obtained by an illegal seizure in violation of the Fourth and Fourteenth Amendments 
 of the United States Constitution and Article 1 § 10 of the South Carolina Constitution.  
 We disagree.
Dash makes much of the 
 fact the Officer initially told him he was not under arrest.  This fact, alone, 
 does not end our inquiry.  An individual approached by a police officer has 
 the right to ignore the Officer and go about his business, where the officer 
 is without probable cause to believe that the individual has been engaged or 
 will engage in criminal activity.  Florida v. Royer, 460 U.S. 491, 498 
 (1983).  Mere refusal to cooperate does not furnish the Officer with the objective 
 justification to detain or seize the individual.  Illinois v. Wardlow, 
 528 U.S. 119, 125 (2000).  However flight amounts to more than a refusal to 
 cooperate.  Flight, by its very nature, is not going about ones business; 
 in fact, its just the opposite. Id.  
Reasonableness of a warrantless 
 seizure depends on the balance between public interest and the individuals 
 right to be free from arbitrary interference from law enforcement. State 
 v. Woodruff, 344 S.C. 537, 551, 544 S.E.2d 290, 297 (Ct. App. 2001).  The 
 balancing test requires a review of the circumstances including but not limited 
 to: (1) the seriousness of the offense; (2) the degree of the likelihood the 
 person detained may have witnessed or have been involved in the offense; (3) 
 the proximity in time and space from the scene of the crime; (4) the urgency 
 of the occasion; (5) the nature of the detention and its extent; (6) the means 
 and procedures employed by the officer; and (7) the presence of any circumstances 
 suggesting harassment or a deliberate effort to avoid the necessity of securing 
 a warrant.  Id.  See also State v. Rodriquez, 323 
 S.C. 484, 476 S.E.2d 161 (1997); United States v. Brignoni-Ponce, 422 
 U.S. 873, 878, 95 S.Ct. 2574, 2578-79 (1975).  
The offense of armed 
 robbery is a very serious crime.  Dash was within a few blocks of the store 
 moments after the robbery occurred and fit the description provided by Herndon.  
 The crime was freshly committed and the police had to act quickly to prevent 
 the robbers from getting away.  Officer Williams was very frank with Dash about 
 the circumstances that encouraged him to make an inquiry and his questions were 
 direct and to the point.  There was nothing in the record to suggest the Officer 
 was harassing Dash or even being impolite.  
Once Officer Williams 
 asked Dash to return to the store with him, Dash may have simply declined and 
 gone about his business.  However, he chose to become nervous and evasive, moving 
 threateningly close to the Officer before taking flight.  Dashs conduct would 
 certainly have aroused reasonable suspicion sufficient to justify further investigation 
 and inquiry.  Dashs behavior could have given the impression he was a threat 
 to the Officers safety, justifying a search for weapons.  See Terry 
 v. Ohio, 392 U.S. 1 (1968).  Dashs sudden flight created a reasonable suspicion 
 of his involvement in the robbery.  See Wardlow, 528 U.S. at 125.  
 Accordingly, Officer Williams was justified in grabbing Dashs jacket to keep 
 Dash from running away.  When the gun fell out of Dashs pocket, the Officer 
 certainly had probable cause to believe Dash may have been involved in the robbery 
 and had good cause to detain him further.  The gun was in plain view on the 
 pavement and was properly seized.  Dashs assault on Officer Williams supported 
 his subsequent arrest.  
Under the totality of 
 the circumstances, Dash was legally detained for Herndons identification of 
 him and all evidence was legally seized incident to the arrest.  Since the detention 
 was proper and the evidence was lawfully seized, we cannot say the trial court 
 erred in denying the motion to suppress.
Accordingly, Dashs conviction 
 is
 AFFIRMED.
 CURETON, ANDERSON and HUFF, JJ., concur.